## Wolfe Adoption Case.

Argued September 26, 1972. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ

*Roland T. Keddie,* for appellants.

*Thomas J. Godlewski,* with him *O'Connell, Silvis & Godlewski,* for appellee.

OPINION BY MR. JUSTICE MANDERINO, November 26, 1973:

The trial court denied appellants' petition requesting an involuntary termination of the parental rights of the appellee, the natural mother of Richard, a male child less than one year old. The trial court ordered that the appellants, prospective adoptive parents, return Richard to his natural mother.

The Adoption Act of 1970 provides for the involuntary termination of parental rights if: ". . . the parent by conduct continuing for a period of at least six months either has evidenced a settled purpose of relinquishing parental claim to a child, or has refused or failed to perform parental duties . . ." Act of July 24, 1970, P. L. 620, §311, 1 P.S. §311(1).

The trial court concluded that the evidence did not warrant an involuntary termination of parental rights under the above Section of the Adoption Act of 1970. We agree with the trial court and affirm.

Prior to Richard's birth on July 13, 1971, discussions took place between Richard's mother (seventeen years of age), Richard's maternal grandmother, and a family doctor, who is also an attorney. The doctor told Richard's mother and the maternal grandmother that he knew of a family who would be willing and anxious to adopt the child. Because Richard was born prematurely, he remained in the hospital for a short while after his mother's release. On July 31, 1971, eighteen days after the birth, Richard was given to the family doctor's nurse, who brought Richard to the prospective adoptive couple. On the same day, July 31, 1971, Richard's mother, at the office of the family doctor, and in the presence of the maternal grandmother, signed a petition for voluntary relinquishment of parental rights. A little over three weeks later the petition was filed on August 25, 1971. The family doctor acting in his attorney capacity filed the petition for Richard's mother. A little less than three weeks later, on September 14, 1971, Richard's mother signed an affidavit which was attached to a Supplement to her petition for voluntary relinquishment of parental rights. The Supplement was signed by the family doctor and states that he was acting as attorney for Richard's mother. The Supplement to the original petition was not filed until almost four months later on January 6, 1972. The record is completely silent concerning the circumstances involved in the signing of the Supplement to the original petition.

On July 31, 1971, the prospective adoptive parents signed a report of intention to adopt and the family doctor on that same day signed an intermediary's report. The report of intention to adopt was filed on August 19, 1971.

On February 1, 1972, Richard's mother received notice that a hearing on her petition would be held on February 8, 1972. On February 8, 1972, Richard's mother appeared and told her attorney and a social

worker that she would not consent to the voluntary relinquishment and wanted her child returned. The family doctor, who in his capacity as the mother's attorney had filed the original petition and the Supplement on behalf of Richard's mother, informed her that, if that was her position, she should immediately seek the assistance of other counsel. Richard's mother immediately obtained other counsel.

On February 10, two days later, the family doctor, acting in his attorney capacity, filed a petition on behalf of the prospective adoptive parents requesting the involuntary termination of the parental rights of Richard's mother. On the same day the petition was presented, an order was signed fixing February 29, 1972, as the date for the hearing on the petition for involuntary termination. After hearing, at which Richard's mother was represented by counsel, and at which the family doctor, in his capacity as an attorney, represented the prospective adoptive parents, the trial court denied the petition for involuntary termination and ordered that Richard be returned to his mother.

Appellants claim that the trial court erred in using the test of abandonment. Appellants argue that although abandonment was the proper test under the Adoption Act of 1925, it is no longer the proper test under the Adoption Act of 1970. Under the new Act, according to the appellants, the proper test is contained for purposes of this case in Section 311(1) of the Adoption Act of 1970. The appellants claim that the new Act deliberately effected a change in the proper test for the involuntary termination of parental rights. The appellants are correct that the memorandum opinion of the trial court which accompanied the decree nisi found that there had been no abandonment and that the memorandum opinion did not specifically address itself to the test contained in Section 311(1) of the Adoption Act of 1970. However, after exceptions were filed by the

appellants, the court en banc confirmed the decree nisi and made findings of fact and conclusions of law which specifically held, under Section 311(1) of the Adoption Act of 1970, that Richard's mother did not evidence a settled purpose of relinquishing parental claim *nor* did she refuse or fail to perform her parental duties within the meaning of Section 311(1) of the Adoption Act of 1970. Both of these conclusions are sustained by the record.

First, the record sustains the conclusion that Richard's mother did not evidence a settled purpose of relinquishing her parental claim. The appellants argue that *inaction and lack of interest* in the child, for a period in excess of *six months,* conclusively evidences a *settled purpose* to relinquish a parental claim under Section 311(1) of the Adoption Act of 1970. We disagree.

Section 311(1) requires that the parent evidence a *settled purpose* of relinquishing parental claim for a period of at least six months. A settled purpose must imply finality of purpose. Under the facts in this case, the trial court properly concluded that the evidence did not support a finding of any such *settled purpose* by Richard's mother.

Appellants are claiming that the silence of Richard's mother during the six-month period between the signing of the petition for voluntary relinquishment and the first scheduled hearing on that petition, conclusively establishes that Richard's mother evidenced a *settled purpose.* A petition for voluntary relinquishment of parental rights, however, cannot in and of itself support a petition for involuntary termination of parental rights. *Sheaffer Appeal,* 452 Pa. 165, 305 A. 2d 36 (1973).

The record clearly indicates that when Richard's mother and the maternal grandmother left the office of the family doctor on July 31, 1971, both were under the impression that there would be a hearing in court

at which Richard's mother could change her mind. The maternal grandmother, who was the only witness called on behalf of the appellants in the involuntary termination proceeding, answered certain questions in cross-examination as follows: "Q. It was understood by you that she [Richard's mother] signed this petition for voluntary relinquishment of parental rights and at that time there would be a six-month period that—correct me if I am wrong, before you went to court? Was that your understanding? A. Yes. And he told me that she could change her mind." At another point in the cross-examination the following question and answer occurred: "Q. Was there a discussion . . . about something happening six months in time, in the future, when you signed the papers? A. [Richard's mother] said that after she signed the papers that she [Richard's mother] still had six months to make up her mind." At another point: "Q. Did [family doctor] say anything about a six-month period? A. Well I still knew there were some final papers that had to be taken care of."

In view of the above testimony in the record, from the only witness who appeared in support of the petition for involuntary termination, we cannot say that the trial court abused its discretion in concluding that there was no evidence of a *settled purpose* by Richard's mother to relinquish her parental claim.

A hearing is required on a petition for voluntary relinquishment to insure an intelligent, voluntary and deliberate consent to the termination of parental rights. *Sheaffer Appeal,* supra; Act of July 24, 1970, P. L. 620, art. III, §303, 1 P.S. §303. The record supports the conclusion that Richard's mother believed and was led to believe that she could enjoy the luxury of indecision for a certain period of time before she had to make a final decision. This does not evidence any *settled purpose.*

Appellants also claim that even if Richard's mother thought she had six months within which to make a final decision, she did not indicate that she wished to withdraw her petition for voluntary relinquishment until February 8, 1972, which was *six months and eight days* after she originally signed the petition for voluntary relinquishment in the office of the family doctor in July 31, 1971. The appellants overlook, however, that Section 311(1) of the Adoption Act of 1970 requires a period of at least six months during which the parent must evidence the required *settled purpose*. Appellants would have us conclude that when Richard's mother left the family doctor's office on July 31, a *settled purpose* was evident and continued until February 8, 1972. The evidence is all to the contrary. There could have been no *settled purpose* on the part of Richard's mother when she believed and was led to believe that there would be a hearing in court at which time she could change her mind.

When the petition for involuntary termination was filed on February 10, a hearing was set nineteen (19) days later on February 29, 1972. The record does not explain why there was a delay in setting a date for a hearing on the petition for voluntary relinquishment. That hearing was not set until *six months and eight days* after Richard's mother first signed her petition and she first received notice that there would be a hearing exactly *six months and one day* after the date when she signed her petition on July 31, 1971. The *settled purpose* which a parent must evidence under Section 311(1) of the Adoption Act of 1970 requires affirmative indication of a positive intent by the parent. There was no such evidence in this case. See *Vaders Adoption Case*, 444 Pa. 428, 282 A. 2d 359 (1971); *Hangartner Adoption Case*, 407 Pa. 601, 181 A. 2d 280 (1962); *Harvey Adoption Case*, 375 Pa. 1, 99 A. 2d 276 (1953). In the absence of a *settled purpose* by Richard's mother to

relinquish her parental claim, the trial court properly concluded that she had not forfeited her parental rights under that portion of Section 311(1).

The record also sustains the trial court's alternate conclusion, under the second portion of Section 311(1), that the appellee did not refuse or fail to perform her parental duties. The performance of parental duties does not mean that a parent must *personally* take care of the child. The responsibility of performing parental duties may be met if the parent has made reasonable arrangements for the temporary care of the child. Otherwise, parents who took an extended world cruise and left their child in the care of a proper person, might later risk an involuntary termination of their parental rights, under the second portion of Section 311(1), because they refused or failed to *personally* perform their parental duties. The statute does not say *personally* perform parental duties and there is no basis for such a restricted interpretation. In this case, the appellee did not refuse or fail to perform parental duties. She made arrangements for the proper care of Richard for a temporary period, as she was led to believe, during which she could decide whether to *personally* assume her parental duties. Under these circumstances, there is no basis for any conclusion except that of the trial court—the appellee did not refuse or fail to perform her parental duties.

Decree affirmed. Each party to pay own costs.