401 A.2d 347

## In re ADOPTION OF R. W. B.

### Appeal of C. W.

Supreme Court of Pennsylvania.

Submitted March 6, 1979.

. Decided May 1, 1979.

Reargument Denied June 5, 1979.

170

Frederick W. Heintz, Jr., Southwestern Pa. Legal Aid Society, Inc., Uniontown, for appellant.

Samuel J. Davis, Uniontown, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, MANDERINO and LARSEN, JJ.

## OPINION OF THE COURT

EAGEN, Chief Justice.

This is an appeal by the natural mother from the final decree[1] entered in the Court of Common Pleas of Fayette County, Orphans' Court Division, decreeing the adoption of R.W.B. by A.W.U. and E.K.U.

R.W.B., the subject of this adoption proceeding, was born on December 18, 1976 in Cheverlyn, Maryland. His natural parents, C.W. and R.L.W., were separated at the time of his birth and were divorced on June 27, 1977. R.L.W. has never seen or supported his son. C.W. has another child, D.M.B., born out of wedlock on October 15, 1975. R.L.W. is not the father of D.M.B. R.W.B. was given his mother's maiden name and, thus, the same last name as D.M.B.

On February 11, 1977, when R.W.B. was approximately six weeks of age, C.W. arranged for his adoption by A.W.U. and E.K.U. The prospective adopting parents took custody of the child at C.W.'s home in Maryland and returned with him to their home in Uniontown, Fayette County, Pennsylvania. Six days later, on February 17, 1977, C.W. traveled

---

1. Section 731 of the Probate, Estates and Fiduciaries Code, 20 Pa. C.S. § 731, provides as follows:

 "Any judge of an orphans' court division, whether or not it consists of more than one judge, may hear and determine all matters jurisdiction of which is exercised through the orphans' court division. His determination thereof shall be a final decree, *unless exceptions thereto are authorized by rule of court or the decree discloses that it is not intended as such.*" [Emphasis added.]

 Section 792 of the Probate Code, 20 Pa.C.S. § 792, provides that "[a]ny party in interest who is aggrieved by a final order or decree of the orphans' court division, . . . may appeal therefrom . . ." Supreme Court O.C. Rule 7.1 states that "[e]xceptions shall be filed at such place and time, shall be in such form . . . *as local rules shall prescribe.*" [Emphasis added.] Since there is no rule of the Orphans' Court Division of the Court of Common Pleas of Fayette County authorizing exceptions to be taken to an adoption decree, the decree in this case entered on April 26, 1978 is final and appellant's failure to file exceptions before appealing to this Court does not constitute a waiver of the issues raised on appeal under Supreme Court O.C. Rule 3.1 and Pa.R.C.P. 1518. See *Estate of Miller,* 467 Pa. 193, 355 A.2d 577 (1976). Cf. *Estate of McGrorey,* 474 Pa. 402, 378 A.2d 855 (1977); *Estate of Stanley,* 470 Pa. 483, 368 A.2d 1259 (1977); *Estate of Rothermel,* 461 Pa. 1, 334 A.2d 603 (1975).

to Uniontown and consented in writing to the adoption of R.W.B. in the office of counsel for the adopting parents. Approximately six months later, in August 1977, C.W. informed A.W.U. and E.K.U. that she wanted the child returned. Nevertheless, on September 6, 1977, A.W.U. and E.K.U. filed a petition for the adoption of R.W.B.

Following notice to all parties, the first hearing on the petition was held on September 28, 1977. At that time, only the adopting parents testified. C.W., stating in advance that her mother whom she needed as a witness was confined to bed and unable to travel to the hearing on that date, did not appear. A subsequent hearing, set for October 12, 1977, was rescheduled to November 3, 1977 due to the hearing judge's illness. On November 3, 1977, C.W. appeared without counsel and the matter was rescheduled to November 17, 1977. C.W. was absent on that date due to the death of her father. On November 29, 1977, C.W., represented by counsel, appeared and testified that she did not consent to the adoption.[2]

At the conclusion of the second hearing, the parties were advised a decision would be withheld pending receipt of a report from Child Welfare Services. Prior to receiving the report, the hearing judge retired from office and the parties stipulated the matter should be decided on the existing record and without further testimony. On April 26, 1978, the court decreed the adoption of R.W.B. by the petitioners. The court concluded R.W.B.'s natural father and mother had abandoned him within the meaning of section 311(1) of the Adoption Act, Act of July 24, 1970, P.L. 620, No. 208, art. III, § 311(1), 1 P.S. § 311(1) (Supp.1978–79) [Hereinafter: Adoption Act], thus making parental consent to the adoption unnecessary.[3]

**2.** Our cases have recognized that consent to adoption by the natural parent may be withdrawn at any time before entry of the final decree of adoption. *In re Adoption of Baby Girl Fleming,* 471 Pa. 73, 369 A.2d 1200 (1977); *Chambers Appeal,* 452 Pa. 149, 305 A.2d 360 (1973); *Hunter Adoption Case,* 421 Pa. 287, 218 A.2d 764 (1966).

**3.** Section 414 reads as follows:
 "414. *When consent not required; parent*

Section 311(1) of the Adoption Act states the following grounds for involuntary termination of parental rights: "(1) The parent by conduct continuing for a period of at least six months either has evidenced a settled purpose of relinquishing parental claim to a child, or has refused or failed to perform parental duties."

This Court has held that section 311(1) must be read in the disjunctive and termination of parental rights may be ordered if the evidence establishes *either* a "settled purpose" to relinquish parental claim for a period of at least six months *or* a failure to perform parental duties for the same length of time. See *In re Adoption of P.,* 475 Pa. 197, 380 A.2d 311 (1977) and cases cited therein. In the instant case, the court concluded termination was justified on both grounds enumerated in section 311(1).

 In reviewing such a conclusion, we must review the testimony and determine whether the findings of fact upon which the conclusion is based are supported by competent evidence. *Fleming,* supra; *In re Adoption of Farabelli,* 460 Pa. 423, 333 A.2d 846 (1975). Additionally, the adopting parents had the burden of showing by a preponderance of the evidence that the statutory requirements for involuntary termination were met, *Fleming,* supra; *In re Adoption of McCray,* 460 Pa. 210, 215, n. 4, 331 A.2d 652, 654, n. 4 (1975), and we may review the conclusion of the court as to this.

 The involuntary termination by law of a natural parent's right to his or her child is a harsh measure carrying serious consequences for both parent and child which a court should grant only where clearly warranted by a preponderance of the evidence. *Fleming,* supra; *In re Adoption of McAhren,* 460 Pa. 63, 331 A.2d 419 (1975); *Sarver Adoption Case,* 444 Pa. 507, 281 A.2d 890 (1971). This is not such a case.

Consent of a parent to adoption shall not be required if a decree of termination with regard to such parent has been entered. When parental rights have not previously been terminated, the court may find that consent of a parent of the adoptee is not required if, after hearing as prescribed in section 313, the court finds that grounds exist for involuntary termination under section 311."

A "settled purpose" to relinquish parental claims requires a deliberate decision by the parent to terminate the parental relationship, and the parent must persist in that determination throughout the six-month period. *Fleming,* supra; *Farabelli,* supra. Thus, this Court has required an " 'affirmative indication of a positive intent,' " see *McAhren,* supra, 460 Pa. at 70, 331 A.2d at 423, as well as a "finality of purpose," see *Wolfe Adoption Case,* 454 Pa. 550, 554, 312 A.2d 793 (1973), before sustaining a conclusion of a "settled purpose." Moreover, any action by the parent within the six-month period inconsistent with such "settled purpose" will preclude an involuntary termination of that parent's rights. See *Sarver,* supra.

Specifically, we have held that a recanted *voluntary* termination petition will not support an *involuntary* termination on "settled purpose" grounds when the petition was withdrawn before a final decree of termination, even though custody had been relinquished for over six months. *Fleming,* supra; *Wolfe,* supra; *Sheaffer Appeal,* 452 Pa. 165, 305 A.2d 36 (1973). Further, this Court has held that evidence of parental inaction and lack of interest in excess of six months will not conclusively establish a "settled purpose" to relinquish. *Farabelli,* supra; *Wolfe,* supra.

It is clear from the record in this case that the natural mother contacted the adopting parents to make arrangements for placing R.W.B. in their custody. She was not present when the actual transfer of custody took place, but six days later she traveled to Pennsylvania to give her written consent to his adoption. However, these events occurred shortly after R.W.B.'s birth when she was physically ill and emotionally upset as a result of incidents of harassment by her estranged husband and his girl friend including shots fired at her home, an arson fire at her home, and an attempted kidnapping of R.W.B. During this period, C.W., who was under a doctor's care, left R.W.B. with a friend for six days in an attempt to restore her health and regain emotional stability. When problems continued, C.W. decided the child would be safer and better cared for by

someone else and, thus, contacted the prospective adopting parents.

C.W. testified she and the adopting parents agreed that they would send her photographs of the baby and that she would be known as the child's aunt. She was to see him "once in awhile" when she could travel to Pennsylvania. Further, C.W. acknowledged signing a consent form but stated she did not read it and was told it was a consent to custody by the adopting parents until the adoption. In an interview with Child Welfare Services, C.W. stated it was agreed that she would be present at court proceedings legalizing the adoption and that she reserved the right to change her mind. C.W. testified she began to change her mind about giving up the child as soon as she saw him on February 17, 1977 in Pennsylvania. C.W. and the adopting parents remained in contact by telephone throughout the spring and summer. These calls were sometimes initiated by C.W. and sometimes by the adopting parents.[4] Although C.W. missed the child progressively more, she had no money for a trip to Pennsylvania. Meanwhile, her husband's harassment ceased after she relinquished custody of the child.

In August 1977, C.W. called to tell the adopting parents she was coming to obtain the return of the child. By the time she arranged for a car and the necessary money to travel to Pennsylvania, she received notice that a hearing on the adoption petition filed September 6, 1977 was scheduled for September 28, 1977, so she postponed her trip until that date. C.W. did not appear at the first and at one other scheduled hearing due to her mother's illness and the death of her father. However, she did make two trips to Pennsylvania to attend scheduled hearings before she was finally

4. The court's opinion states that, for a nine-month period from the time of physical transfer to the date of the second hearing, "the only interest shown by the natural mother of the adoptee was an occasional telephone call to the adopting parents." The record, however, indicates there was regular and frequent communication between the mother and the adopting parents.

permitted to testify and withdraw her consent to the adoption on November 29, 1977.

In light of undisputed evidence that the natural mother's decision to allow adoption of her child was made during a time of severe emotional distress and uncontradicted evidence that the mother wavered in her determination to give up the child from the time she relinquished physical custody until approximately six months later when she asked for his return, the decision cannot be considered a "deliberate" one. Hence, on this record, we cannot agree the court's conclusion of a "settled purpose" to relinquish parental claim is supported by the facts.

The court below also justified termination of C.W.'s parental rights on a conclusion that C.W. failed to perform parental duties for at least six months. We cannot sustain such a determination when it is based, as in this case, on a finding of a temporary failure or inability which results from a parent's personal crisis. *In re Adoption of P.,* supra; *Matter of Kapcsos,* 468 Pa. 50, 360 A.2d 174 (1976); *Re: Adoption of M.T.T.,* 467 Pa. 88, 354 A.2d 564 (1976). Pennsylvania case law recognizes a parent may fulfill his or her responsibility for parental duties in such a situation by making reasonable arrangements for the temporary care of a child. *In re Adoption of P.,* supra; *Wolfe,* supra.

The record in this case reveals a mother who was under stress and unable to properly care for her child as a result of acts of harassment by the child's father. She transferred custody of the child to a couple known to her on the condition that she be allowed to visit him. Despite her limited finances, she made frequent telephone calls to inquire about the child. After approximately six months, when the harassment stopped and C.W. regained emotional control, she reevaluated the situation and determined she could, after all, care for the child. Under these circumstances, we must view the transfer of the child to persons who could provide better care as temporary and a result of the mother's personal crisis. Thus, on these facts, we cannot

sustain an involuntary termination based on failure to perform parental duties.

Decree reversed. Each party to pay own costs.

ROBERTS, J., filed a dissenting opinion.

ROBERTS, Justice, dissenting.

The Orphans' Court Division of the Court of Common Pleas of Fayette County decreed the adoption of R.W.B. by appellees, Mr. and Mrs. U., after determining that appellant, C.W., R.W.B.'s natural mother, failed for a period in excess of six months to perform parental duties. The orphans' court determined as well that adoption by the U.'s was in the best interest of R.W.B., who was then one year old. The majority, however, holds that termination of appellant's parental rights pursuant to § 311(1) of the Adoption Act * was erroneous and reverses the decree of the orphans' court. I dissent.

The proper scope of review of an involuntary termination of parental rights is limited to determining whether the orphans' court's decree is supported by competent evidence. E. g., *In Re Involuntary Termination of Parental Rights of S.C.B. and K.T.*, 474 Pa. 615, 379 A.2d 535 (1977); *Adoption of M.T.T.*, 467 Pa. 88, 364 A.2d 564 (1976). Findings of the orphans' court supported by evidence of record are entitled to the same weight given a jury verdict and must be sustained unless the court abused its discretion or committed an error of law. *In re William L.*, 477 Pa. 322, 383 A.2d 1228 (1978); *Cohen Will*, 445 Pa. 549, 284 A.2d 754 (1971). Such findings must be accepted by this Court on appeal.

The findings of the orphans' court are supported by competent evidence and reveal that R.W.B. was born on December 18, 1976. R.W.B.'s father, R.L.W., and mother, C.W., had separated some six months prior to their son's birth.

* Act of July 24, 1970, P.L. 620, § 311(1), 1 P.S. § 311(1) (Supp.1979).

For the first forty-nine days of R.W.B.'s life, appellant cared for her son. Appellant and her son resided with appellant's parents and appellant's daughter, D.M.B. For the next six days of R.W.B.'s first six weeks of life, appellant left him in the custody of a friend.

Shortly after R.W.B.'s birth, appellant contacted appellees and inquired whether they were still interested in adopting a child. On February 11, 1977, at the direction of appellant, appellees drove from their home in Pennsylvania to Maryland where they obtained custody of R.W.B. Six days later, appellant travelled from Maryland to Pennsylvania for the specific purpose of formally consenting to the adoption of R.W.B. by appellees. While in Pennsylvania she executed such a consent.

During the next nine months, appellant occasionally spoke to appellees on the telephone. Apparently, calls were initiated by both appellees and appellant. Appellant did not visit her son during this period. Nor did she contribute financially or in any other way toward the physical and emotional well-being of R.W.B. Nonetheless, in August 1977, six months after appellant had surrendered custody of her son for adoption and had executed a consent to his adoption, appellant stated she was willing to regain custody of R.W.B. The orphans' court specifically found, however, that appellant "performed no affirmative act in accordance with this expressed desire."

Thus, the record indicates that for the better part of the first year of R.W.B.'s life, appellant was content to let others care for her son while she continued to lead her own life, free from the responsibility of caring for her child. The orphans' court's determination that appellant failed to provide her son with essential parental care for at least six months is clearly supported by the record and may not be disturbed by this Court. To reach its conclusion to the contrary, the majority exceeds the bounds of proper appellate review by completely disregarding the findings of the

orphans' court. Instead it reads the record de novo as though it and not the orphans' court were the trier of fact and draws its own entirely independent findings from the notes of testimony.

Moreover, the majority ignores this Court's repeated admonition that a parent has an affirmative duty to provide his or her child with love, protection, guidance and support. E. g., *In re Involuntary Termination of Parental Rights of S.C.B. and K.T.,* supra; *Adoption of McCray,* 460 Pa. 210, 331 A.2d 652 (1975). Temporary hardship does not justify a parent's failure to fulfill this affirmative obligation. "Parental rights may not be preserved by complete indifference to the daily needs of a child or by merely waiting for some more suitable financial circumstance or convenient time for the performance of parental duties and responsibilities (while others adequately provide the child with her immediate and continuing physical and emotional needs)." *Smith Adoption Case,* 412 Pa. 501, 505, 194 A.2d 919, 922 (1963). "Mere expressions of interest in the child and a desire to eventually be reunited with the child, unaccompanied by affirmative steps to bring that result about, are insufficient to preserve parental rights." *In re Adoption of P.,* 475 Pa. 197, 223, 380 A.2d 311, 317 (1977) (Dissenting Opinion of Roberts, J., joined by Eagen, C. J.). Rather than assuming her parental duty to take and maintain a position of importance in R.W.B.'s life and provide her son with love, protection, guidance, and support, appellant simply yielded to what she perceived as obstacles and temporary difficulties. Appellant was satisfied to allow appellees to fulfill the needs of her infant son even after the difficulties she may have encountered in the first weeks of R.W.B.'s life had ended.

The decree of the orphans' court is amply supported by competent evidence of record. Here, as in innumerable cases in which this Court has not disturbed the orphans' court's findings of fact supported by the record, the decree should be affirmed.