467 A.2d 828

**In re ADOPTION OF Raymond J. DURHAM, Henry J. Durham and Michael A. Durham.**

**Appeal of Ruth M. Durham DUMAS, Natural Mother.**

Superior Court of Pennsylvania.

Argued June 7, 1983.

Filed Oct. 28, 1983.

Mary Ann McConnell, Mercer, for appellant.

Brenda Katherine McBride, Grove City, for appellees.

Before CERCONE, President Judge, and SPAETH and HESTER, JJ.

SPAETH, Judge:

This appeal is from an order involuntarily terminating appellant's parental rights to her three children. We have concluded that the trial court applied an incorrect standard of proof, and unduly restricted the evidence. We therefore reverse and remand for a new hearing.

In *Santosky v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982), the Court held that parental rights may not be involuntarily terminated except upon at least clear and convincing evidence. In *In Re Adoption of M.E.T.*, 313 Pa.Super. 316, 459 A.2d 1247 (1983), we held

> that any case in which a party's parental rights were terminated based on a preponderance of the evidence standard should be remanded to the trial court for further proceedings at which the constitutionally mandated clear and convincing evidence standard shall be applied. [ ] We do not, however, feel that the lower court must, in all cases, hold new evidentiary hearings.

*Id.*, 313 Pa.Superior Ct. at 323, 459 A.2d at 1251 (footnote omitted).

Here the trial court applied the preponderance of the evidence standard. Slip op. filed Feb. 10, 1982, at 2. Accordingly, the case must be remanded so that the court may apply the clear and convincing evidence standard. (It is only fair to note that when the trial court reached its decision, the applicable standard was the preponderance of evidence standard.) The only issue requiring extended discussion is whether the court unduly restricted the testimony and on remand, must therefore hold a new hearing.

On April 28, 1978, appellant's three children, Raymond, Henry, and Michael, then 9, 8, and 7 years old, were adjudicated dependent. They were placed in the custody of Mercer County Children and Youth Services, which placed them in a foster home. In August 1979 the agency wrote to appellant, who was then living in New York, informing her that the agency "intend[ed] to work towards" the adoption of her children by their foster parents, and advising her to

consult an attorney, since Pennsylvania law would permit an adoption if appellant had no contact with her children for six months. A New York attorney representing appellant replied to the agency's letter, stating that appellant was opposed to her children being adopted, and protesting that a letter appellant had written the agency in December 1978, requesting the address of the children and that she be permitted to visit them, had not been answered. On September 21 the agency replied to appellant's attorney. The agency did not give an address for appellant's children, but said that appellant had shown no interest in her children's progress, and had "only to request a visit" with her children in Mercer County. On October 17 the agency again wrote to appellant. The letter asked that appellant "consider giving consent to [her children's] adoption," going on to say that if she intended to seek custody of the children, "the *first* [agency's emphasis] thing you must do is contact this agency. Never have we denied you visits. You simply need to call to schedule an appointment to make arrangements to travel to Mercer County." Appellant then telephoned the agency to explain that she was unable to make a trip to Mercer County to visit her children. The agency responded with a letter of November 16, telling appellant that as evidence of her interest in the children she might write them at least once a month and perhaps send them each a Christmas gift. The agency further advised appellant that the foster parents were "very much interested in adopting the children" and that should she continue to have no regular contact with her children and the agency, the agency would file a petition for the involuntary termination of her parental rights so that the foster parents could adopt the children without her consent. The letter urged appellant to consult an attorney. On December 17 appellant wrote to her children, stating that she loved them and missed them. She also sent them Christmas gifts. From then until July 1980 appellant had no contact with her children or the agency.

On July 3, 1980, the agency filed a petition asking that appellant's parental rights be involuntarily terminated. The petition alleged that for the six-month period from December 18, 1979, to July 1, 1980, appellant had "evidenced a settled purpose of relinquishing her parental rights," and had "refused or failed to perform [her] parental duties." A hearing was held on August 25, but appellant did not appear nor was she represented by counsel. On August 27 the trial court filed an opinion making findings of fact and conclusions of law, and entered a decree nisi terminating appellant's parental rights and giving her 20 days in which to file exceptions. On September 30 the court granted appellant 20 days from that date to file exceptions; the court stated that it had been informed that appellant had moved, and expressed its concern that she might not have received the previous opinion and decree nisi. On October 15 the court appointed counsel for appellant, and on October 21 appellant was given an additional 20 days in which to file exceptions. On November 10 appellant's attorney filed exceptions, claiming that the court had erred in entering its decree nisi in appellant's absence, and in failing to inform appellant that if she could not afford an attorney, one would be appointed to represent her. On January 22, 1981, the court vacated its decree nisi, and ordered that "a hearing de novo shall be held."

The new hearing was held on March 25, 1981. Appellant appeared, with her court-appointed attorney. Also present were an attorney representing the children and an attorney representing the agency. A clinical psychologist, two supervisors from the agency, the foster mother, and appellant testified. On July 29 the trial court filed an opinion, which included findings of fact, discussion, and conclusions of law, and a decree nisi terminating appellant's parental rights on the grounds that for a period of at least six months she "ha[d] evidenced a settled purpose of relinquishment of her parental claim and ha[d] refused or failed to perform parental duties as to her three children." Appellant filed exceptions, and on February 8, 1982, the trial court filed an

opinion and final decree dismissing the exceptions and terminating appellant's parental rights to the children.

Appellant's first and third exceptions—we see no need to discuss the others—were to the action of the trial court in refusing to hear testimony of appellant's activities after the six-month period of December 1979 to July 1980, during which appellant had no contact with her children. Appellant was permitted to testify concerning her contact with her children prior to the six-month period and to explain her lack of contact with her children and the agency during the period from December 1979 to July 1980. The trial court, however, would not permit appellant to testify as to events which occurred subsequent to July of 1980.

Q. [APPELLANT'S ATTORNEY] How often have you been in contact with your children since July of 1980?

A. [APPELLANT] I've been calling my boys once a month on the telephone since I've gotten their phone number.

MR. GRABAN: [THE AGENCY'S ATTORNEY] I object for the record. I don't think that what's happened since July of '80 is relevant to this hearing. We'd be glad to stipulate that the woman has had contact since that time. The reason we make that objection is that we understand this hearing today to be the August, 1980, hearing, which is being held so that this woman can be afforded counsel.

THE COURT: Objection sustained.

N.T. at 15.

It thus appears that the agency's attorney objected, and the court sustained the objection, to testimony regarding appellant's contact with her children after the six-month period on the ground that the new hearing was to be conducted as if it were the August 1980 hearing. In its opinion in support of its dismissal of appellant's exceptions, however, the court gave a different explanation for limiting appellant's testimony. The court explained:

> Once a six-months' period of abandonment has passed, mere renewal of interest and expression of desire for

return of a discarded child does not negate abandonment. *In re: J.F.*, 487 Pa. 115, 408 A.2d 1382 (1979). *Matter of Adoption of David C.*, 479 Pa. 1, 387 A.2d 804 (1978) . . . . It would appear that the natural mother's contention is that although the statute provides for a six-months' period and although there may be evidence to demonstrate abandonment for a six-months' period as required by the Adoption Act that subsequent interest can nullify the legal effect of prior in action. The mother has failed to present any authority for this position and the law as noted herein is against it.

Slip op. filed Feb. 10, 1982, at 2–3.

We are not persuaded by this reasoning.

In *In Re Adoption of R.W.B.*, 485 Pa. 168, 401 A.2d 347 (1979), the Court said:

This Court has held that section 311(1) [now 23 Pa.C.S.A. § 2511(a)(1) ] must be read in the disjunctive and termination of parental rights may be ordered if the evidence establishes *either* a "settled purpose" to relinquish parental claim for a period of at least six months *or* a failure to perform parental duties for the same length of time.

*Id.*, 485 Pa. at 173, 401 A.2d at 349 (emphasis in original).

Here, the trial court's decree nisi states that appellant's parental rights were terminated on both grounds: because she "ha[d] evidenced a settled purpose of relinquishment of her parental claim *and* [emphasis added] ha[d] refused or failed to perform parental duties . . . ."

 A finding of settled purpose "requires an affirmative indication of a positive intent by the parent." *In Re Adoption of Wolfe*, 454 Pa. 550, 555, 312 A.2d 793, 796 (1973). Evidence of inaction and lack of interest for six months will not conclusively establish settled purpose, *Adoption of Baby Girl Fleming*, 471 Pa. 73, 369 A.2d 1200 (1977); *In Re Adoption of Wolfe, supra,* and evidence of a parent's conduct subsequent to the claimed abandonment may disprove settled purpose. Thus in *Adoption of Baby Girl Fleming, supra,* the trial court admitted evidence that the mother had been pressured by her parents into agreeing to

adoption and did not find out that she could recant her voluntary relinquishment until a year and a half after she had delivered the child to the intermediary. In affirming the trial court's finding that there had been no settled purpose, the Supreme Court said:

If the evidence presented on these claims by [the mother] were accepted as true, it could rebut the inference of a settled purpose which arises from the affirmative act of delivery of the child to the intermediary. Additionally, such evidence could undermine the argument that a final purpose persisted for the required time period because evidence of subsequent statements or inaction by the mother have to be viewed in light of her wrongful impression that the adoption was irrevocable [when she delivered the child to the intermediary.]

*Id.*, 471 Pa. at 79, 369 A.2d at 1203.

In *Adoption of M.T.T.*, 467 Pa. 88, 354 A.2d 564 (1976), the Court similarly considered evidence of a parent's conduct subsequent to the claimed abandonment. There, the father, who was in prison, had had no contact with his child or the agency for nine months, from January 1974, when the father wrote a letter to the agency asking that he be informed of all future decisions concerning his child, until October 1974, when the agency requested a hearing to terminate his rights. Later in October the father was released from prison, and he had a meeting with the agency, but his request for information about his son was refused. The father also tried to find his son, but without success. In January 1975 the trial court on the agency's petition terminated the father's parental rights. The Supreme Court reversed, finding the evidence insufficient to support a finding of settled purpose. Said the Court:

Appellant, in his initial contacts with children's services, demonstrated his continuing interest in maintaining a parental relationship with his son and his desire to be informed of all legal proceedings involving his son. There is no evidence whatever that appellant changed his mind after writing this letter other than his failure to

contact children's services for the following nine months .... Appellant, once he could make personal inquiries, made diligent efforts to locate his son. These factors demonstrate that appellant did not make "an affirmative indication of a positive intent" to abandon M. Rather, the record shows that he fully intended to exercise his parental rights as fully and as soon as possible.

*Id.*, 467 Pa. at 95, 354 A.2d at 568.

Thus the Court looked to evidence of the father's actions *after* the nine month period of "abandonment" in order to decide whether *during* that period the father had formed a settled purpose of relinquishing his parental rights.

■ A similar inquiry must be made where the claim is that the parent has failed to perform parental duties for a period of at least six months, that is to say, in deciding whether there has been such a failure, the trial court is not to confine itself to considering what happened during the six months; it must also consider what happened afterwards. Thus, in *In Re Adoption of J.A.B.*, 487 Pa. 79, 408 A.2d 1363 (1979), the Court stated:

The court's finding of an absence of direct contact between J. and his parents for a period in excess of six months is not disputed. However, *this fact alone* will not support a determination of failure to perform parental duties where *the totality of the circumstances,* including evidence of the parents' individual circumstances and any explanation offered by them, does not warrant termination of their rights.

*Id.*, 487 Pa. at 89, 408 A.2d 1363 (emphasis added).

And in *In Re Adoption of R.W.B., supra,* the Court determined that a six month failure to perform parental duties resulted from a personal crisis and therefore refused to terminate a mother's parental rights. It considered the mother's actions in attempting to regain custody of her child after having relinquished custody for over six months. The Court stated:

After approximately six months, when the harassment [by her husband] stopped and C.W. regained emotional

control, she reevaluated the situation and determined she could, after all, care for the child. Under these circumstances, we must view the transfer of the child to persons who could provide better care as temporary and a result of the mother's personal crisis.

*Id.* 485 Pa. at 176, 401 A.2d at 351.

These decisions reflect the familiar evidentiary principle that in general, all relevant evidence should be admitted. Relevancy has been defined as "probative worth" and as "the tendency of the evidence to establish a material proposition." McCORMICK ON EVIDENCE, § 185 at 433, 435 (2nd ed.) (1972). Therefore, "in the search for the truth of the issue, reason would suggest that if evidence is logically probative, it should be received unless there is some distinct ground for refusing to hear it." *Id.* at 433. Clearly, evidence of a parent's conduct after the period of alleged abandonment may be relevant to a finding whether in fact abandonment occurred.

In support of its ruling excluding evidence of appellant's conduct after the six-month period, the trial court—as we have already noted, in quoting from its opinion—relied on *In re J.F., supra,* and *Matter of Adoption of David C., supra.* But these cases are inapposite, for they involve a substantive, not an evidentiary, principle. They hold that once parental rights *have been lost,* they will not be "revive[d]" by the parent's "renewal of interest" in the child. *Matter of Adoption of David C., supra* 479 Pa. at 15, 387 A.2d at 811, quoting *Adoption of McCray,* 460 Pa. 210, 217, 331 A.2d 652, 655–56 (1975). The issue here is what evidence the court must consider in deciding whether parental rights *have* in fact been lost. Specifically: It is quite possible that if the trial court had permitted appellant to testify regarding her conduct with respect to the children after the six-month period, the court's decision would have been the same. Having considered the testimony as part of the "totality of the circumstances," *In Re Adoption of J.A.B., supra,* the court might nevertheless have found that for a period of at least six months appellant had formed

either a settled purpose to relinquish her parental rights, or had failed to perform her parental duties, or both. In that event, the court might properly have ordered appellant's parental rights involuntarily terminated, with the observation that while the evidence showed a "renewal of interest" by appellant in her children, that did not undo her prior conduct. Having "discarded" her children, *Adoption of McCray, supra,* she could not reclaim them. *Matter of Adoption of David C., supra.* But that is not the way the court proceeded. Instead of *considering* evidence of appellant's conduct after the six-month period, and finding that in the light of all of the other evidence it was unpersuasive, the court *refused* to consider the evidence. Cases such as *Matter of Adoption of David C.* do not sanction such refusal. In that case, it appeared that the father had had almost no contact with his son from December 1965 to May 1973. He was permitted, however, to testify to later contacts, between May 1973 and the adoption hearing in November 1974 (two visits, two telephone calls, six letters, and Christmas and birthday cards). The Supreme Court did not say that the trial court should have done what the trial court did here: not have received evidence of later contacts. Rather, the Court held that when all of the evidence was considered, it was "clear that for approximately seven and one-half years, [the father] manifested no genuine interest in his son and no concern for his care or well-being." *Id.* 479 Pa. at 12, 387 A.2d at 809. The Court characterized the evidence of the father's later contacts with his son as "definitely ... insufficient" to overcome, or undo, the evidence of "the prior seven and one-half years of neglect." *Id.,* 479 Pa. at 16, 387 A.2d at 811. It therefore held that the trial court had erred in holding that the adopting parent had failed to prove the father's settled purpose of relinquishing his parental rights. *Id.,* 479 Pa. at 17, 387 A.2d at 812.

One further comment is perhaps necessary to avoid misunderstanding of the order we enter. Our reversal is based entirely on procedural considerations, specifically, the application by the trial court of the preponderance of evidence

standard of proof instead of the clear and convincing evidence standard and the court's exclusion of evidence of appellant's contacts with her children after the six-month period. We have not reached the merits, and therefore in remanding we intimate no opinion regarding what order the trial court should enter after, upon further hearing, it has permitted all parties to supplement the record already made, and has examined that record in light of the clear and convincing evidence standard.

Reversed and remanded for further proceedings consistent with this opinion.