J-S51002-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: M.I.G., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: R.G., NATURAL FATHER | : | No. 298 EDA 2015 |

Appeal from the Order Entered December 18, 2014
In the Court of Common Pleas of Philadelphia County
Family Court at No(s): CP-51-AP-0000548-2013;
FID 51-FN-001448-2012

BEFORE:  GANTMAN, P.J., LAZARUS, J., and PLATT, J.*

MEMORANDUM BY GANTMAN, P.J.:          **FILED AUGUST 14, 2015**

Appellant, R.G. ("Father"), appeals from the order entered in the Philadelphia County Court of Common Pleas, which granted the petition of the Department of Human Services ("DHS") for involuntary termination of Father's parental rights to his minor child, M.I.G. ("Child").[1]  We affirm.

In its opinion, the trial court fully and correctly set forth the relevant facts and procedural history of this case.  Therefore, we have no reason to restate them.[2]

Father raises the following issues for our review:

---

[1] Child's mother voluntarily relinquished her parental rights to Child and is not a party to this appeal.

[2] The court granted DHS' petition for involuntary termination of Father's parental rights on December 18, 2014 (not December 12, 2014).  On January 16, 2015, Father timely filed a notice of appeal and a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i).

---

*Retired Senior Judge assigned to the Superior Court.

WHETHER THE TRIAL COURT ERRED AND/OR ABUSED ITS DISCRETION BY TERMINATING THE PARENTAL RIGHTS OF FATHER, R.G.[,] PURSUANT TO 23 PA.C.S.A. SECTION 2511(A)(1) WHERE FATHER PRESENTED EVIDENCE THAT HE TRIED TO PERFORM HIS PARENTAL DUTIES. ADDITIONALLY, FATHER VISITED HIS DAUGHTER THROUGHOUT THE TIME SHE WAS IN FOSTER CARE.

WHETHER THE TRIAL COURT ERRED AND/OR ABUSED ITS DISCRETION BY TERMINATING THE PARENTAL RIGHTS OF FATHER, R.G.[,] PURSUANT TO 23 PA.C.S.A. [SECTION] 2511(A)(8) WHERE EVIDENCE WAS PRESENTED TO SHOW THAT THE CHILD WAS REMOVED FROM THE CARE OF THE MOTHER AND FATHER IS CAPABLE OF CARING FOR HIS CHILD. ADDITIONALLY, FATHER VISITED WITH HIS DAUGHTER AND MAINTAINED CONTACT WITH HER OVER THE LAST SEVERAL MONTHS.

WHETHER THE TRIAL COURT ERRED AND/OR ABUSED ITS DISCRETION BY TERMINATING THE PARENTAL RIGHTS OF FATHER, R.G.[,] PURSUANT TO 23 PA.C.S.A. [SECTION] 2511(B) WHERE EVIDENCE WAS PRESENTED THAT ESTABLISHED THE CHILD HAD A CLOSE BOND WITH HER FATHER.

(Father's Brief at 7).

The standard and scope of review applicable in termination of parental rights cases are as follows:

When reviewing an appeal from a decree terminating parental rights, we are limited to determining whether the decision of the trial court is supported by competent evidence. Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. Where a trial court has granted a petition to involuntarily terminate parental rights, this Court must accord the hearing judge's decision the same deference that it would give to a jury verdict. We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.

> Furthermore, we note that the trial court, as the finder of fact, is the sole determiner of the credibility of witnesses and all conflicts in testimony are to be resolved by [the] finder of fact. The burden of proof is on the party seeking termination to establish by clear and convincing evidence the existence of grounds for doing so.
>
> The standard of clear and convincing evidence means testimony that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitation, of the truth of the precise facts in issue. We may uphold a termination decision if any proper basis exists for the result reached. If the trial court's findings are supported by competent evidence, we must affirm the court's decision, even though the record could support an opposite result.

*In re Adoption of K.J.*, 936 A.2d 1128, 1131-32 (Pa.Super. 2007), *appeal denied*, 597 Pa. 718, 951 A.2d 1165 (2008) (internal citations omitted).

After a thorough review of the record, the briefs of the parties, the applicable law, and the comprehensive opinion of the Honorable Joseph L. Fernandes, we conclude Father's issues merit no relief. The trial court opinion discusses and properly disposes of the questions presented. (**See** Trial Court Opinion, filed March 24, 2015, at 3-7) (finding: Father did not achieve any of his family service plan ("FSP") goals throughout thirty-one months Child was in placement; Father's FSP goals included contacting DHS to become involved in Child's treatment plan; DHS made Father aware of FSP goals on numerous occasions by mailing FSPs to Father's residence;[3]

---

[3] DHS performed multiple parent locator searches to locate Father after the court placed Child in DHS' custody. DHS found one address for Father, which is where paternal grandmother resides. Father testified that he lives with his girlfriend sometimes and lives with paternal grandmother at other

Father admitted he received documents DHS sent him; Father chose not to

participate in FSP meetings and failed to attend all hearings except for

termination of parental rights hearing; at every permanency review hearing,

court found Father non-compliant with FSP goals; Father refused to perform

parental duties; Father knew Child was living with maternal grandmother,

but he did not attend Child's medical appointments or school activities;

Father made no effort to be part of Child's life on regular basis even though

Father lived in Child's neighborhood; conditions which led to Child's removal

continue to exist;[4] Father and Child have no parent/child bond; termination

of Father's parental rights will not irreparably harm Child; Father did not

regularly visit with Child, even though DHS offered him visits and maternal

grandmother welcomed Father into her home to visit Child; Father visited

Child only on her birthday or Christmas, and once in summer 2014; DHS

social worker testified Child's best interests will be served by adoption by

_____

times.  Father admitted he had received mail from DHS sent to paternal
grandmother's home.

[4] Father argues DHS removed Child from mother's care (not his own care).
On this basis, Father suggests the conditions which led to Child's removal do
not still exist.  Father failed to raise this claim in his Rule 1925(a)(2)(i)
statement, so it is waived.  *See Commonwealth v. Castillo*, 585 Pa. 395,
888 A.2d 775 (2005) (holding any issues not raised in Rule 1925 concise
statement will be deemed waived on appeal); *In re L.M.*, 923 A.2d 505
(Pa.Super. 2007) (explaining waiver rules under Rule 1925 apply in context
of family law cases).  Moreover, DHS removed Child from mother's care
based on parents' present inability to care for Child due to mother's actions
and the fact that Father's whereabouts were unknown.  At the time of the
termination hearing, parents were still unable to care for Child.  Thus, even
if Father had preserved this claim, it would not merit relief.

maternal grandmother; maternal grandmother cares for Child's siblings as well; Child is thriving in maternal grandmother's care; DHS' witnesses were credible; Father lacks appropriate parenting skills and capacity to care for Child; termination of Father's parental rights was proper under Section 2511(a)(1), (a)(8), and (b)).[5]  Accordingly, we affirm on the basis of the trial court's opinion.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/14/2015

---

[5] The correct citation for **In re Bowman** is 647 A.2d 217 (Pa.Super. 1994), *aff'd*, 542 Pa. 268, 666 A.2d 274 (1995).  The correct citation for **In re Adoption of T.B.B.** is 835 A.2d 387 (Pa.Super. 2003).

RECEIVED

2015 MAR 24 PM 2: 56

PROPROTHY

**IN THE COURT OF COMMON PLEAS
FOR THE COUNTY OF PHILADELPHIA
FAMILY COURT DIVISION**

In Re: M.I.G. A MINOR
                :
                : CP-51-AP-0000548-2013
                : FID-51-FN-001448-2012
APPEAL OF: R.G., Father      : 298 EDA 2015

**OPINION**

**Fernandes, J.:**

Appellant, R.G., ("Father"), appeals from the order entered on December 18, 2014, granting the petition filed by the Department of Human Services of Philadelphia County ("DHS"), to involuntarily terminate Father's parental rights to M.I.G. ("Child") pursuant to the Adoption Act, 23 Pa.C.S.A. §2511 (a)(1), (a)(8), and (b). Claire Leotta, Esquire, counsel for Father, filed a timely Notice of Appeal with a Statement of Errors Complained Of pursuant to Rule 1925(b).

The first issue raised in Father's Statement of Errors Complained of is that DHS failed to meet its burden for termination by clear and convincing evidence under 23 Pa.C.S.A. §2511 (a)(1), (a)(2), (a)(5), (a)(8), and (b). However during the termination hearing, the trial court found clear and convincing evidence to terminate Father's parental rights only under 23 Pa.C.S.A. §2511 (a)(1), (a)(8), and (b). (N.T. 12/18/14, pg. 82).

**Factual and Procedural Background**

The family first became involved with DHS on March 30, 2011, when DHS received a General Protective Services ("GPS") report alleging that O.P., ("Mother") neglected one of Child's siblings by refusing to take her to a medical check-up to treat a birth defect. (DHS Exhibit A). On July 1, 2011, DHS received a second GPS report alleging that Mother tested positive for cocaine while she was pregnant with Child's second sibling. (DHS Exhibit A). On July 26, 2011, DHS received a third GPS report alleging that the newborn, Child's second sibling, was left unsupervised all night by Mother. (DHS Exhibit A). All three reports were substantiated. (DHS Exhibit A). On October

4, 2011, Mother moved with Child and Child's siblings to Caton Village where Mother received intensive inpatient treatment. (DHS Exhibit A). On October 13, 2011, Mother abandoned Caton Village facilities leaving Child and her siblings with maternal uncle. (DHS Exhibit A). A fourth GPS report was issued on April 16, 2012, alleging that on April 15, 2012, Mother tested positive for cocaine and gave birth to Child's third sibling. (DHS Exhibit). The whereabouts of Child's Father were unknown to DHS at that time. (DHS Exhibit A).

On May 10, 2012, DHS filed a dependency petition to adjudicate the Child and her siblings dependent. On May 21, 2012, an adjudicatory hearing was held for Child. Temporary commitment was discharged, and Child was committed to DHS based on present inability of parents. Child was placed in kinship with her maternal grandmother. (DHS Exhibit A). The whereabouts of Child's Father remained unknown to DHS. (DHS Exhibit A). DHS made reasonable efforts to locate Father by conducting a parent locator search on May 14, 2012, August 19, 2013, January 10, 2014, and on May 21, 2014. (N.T. 12/18/14, pgs. 11-12), (DHS Exhibit 1-3, 6). DHS also made reasonable efforts to provide Father with notice about hearing dates and informing Father that Child was under DHS custody. Father was living with his mother and a DHS social worker testified that she visited the house and spoke to Father's mother, who stated that Father would call the DHS social worker but he never did. (N.T. 12/18/14, pgs. 16-17). DHS also sent various letters to Father at his mother's address. (N.T. 12/18/14, pg. 16). On July 9, 2012, a Family Service Plan ("FSP") was developed for Father and a FSP meeting was held. The goal for Father was to contact DHS and the agency to become involved in Child's treatment plan. (N.T. 12/18/14, pg. 18). Father was given notice of the FSP meeting but did not attend it. (N.T, 12/18/14, pg. 52). Father was aware that Child was in DHS custody because DHS mailed Father letters, maternal grandmother had various conversations with Father about Child's involvement with DHS, Children's Choice sent letters to Father, and Father testified that he knew Child was in DHS's care. (N.T. 12/18/14, pgs. 37, 48, 58-59).

On November 14, 2012, a permanency review hearing was held and the court found that Father was non-compliant with his FSP objectives, services and recommendations, and that reasonable efforts were made by DHS. Father was offered supervised visits with Child but Father failed to attend the hearing. On February 17, 2013, an FSP meeting was held for Father which Father failed to attend even though he received notice of this meeting by mail. (N.T. 12/18/14, pgs. 20-21). Father's FSP

goals remained to establish contact with DHS and become involved in Child's treatment plan. On April 23, 2013, and July 15, 2013, permanency review hearings were held. Father was not present at either of these hearings even though he was notified of the court dates by mail. Father testified that he was aware of the court dates. (N.T. 12/18/14, pgs. 59-60). On August 8, 2013, a FSP meeting was held, Child's goal was changed to "Adoption," because Mother signed voluntary relinquishment of parental rights and Father's whereabouts remained unknown because Father had failed to reach out to DHS. (N.T. 12/18/14, pg. 24). On October 10, 2013, DHS filed a Petition for Involuntary Termination of Father's Parental Rights. On December 12, 2014, Father's parental rights were terminated.

**Discussion:**

On appeal, Father raises the following issues:

1. Did the trial court commit an error of law and abuse of discretion by involuntarily terminating Father's parental rights under 23 Pa.C.S.A. §2511(a)(1) and (a)(8), where the evidence presented at trial was not clear and convincing to terminate Father's parental rights because Father presented evidence that he met most of his FSP goals and maintained consistent visitation with Child?

2. Did the trial court erred and/abused its discretion by entering an order on December 18, 2014, involuntarily terminating the parental rights of Father pursuant to 23 Pa. C.S.A. section 2511(b) where DHS failed to prove by clear and convincing evidence that involuntarily terminating Father's rights best served the emotional needs and welfare of the Child because evidence was presented that the Child has a bond with Father?

As to the first issue on appeal, the grounds for involuntary termination of parental rights are enumerated in the Adoption Act at 23 Pa.C.S.A. §2511(a). The Adoption Act provides the following grounds for involuntary termination.

**(a) General rule** - The rights of a parent, in regard to a child, may be terminated after a petition is filed on any of the following grounds:

(1) The parent, by conduct continuing for a period of at least six months immediately preceding the filing of the petition, has either evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

In proceedings to involuntary terminate parental rights, the burden of proof is on the party seeking termination to establish by clear and convincing evidence the existence of grounds for termination.

*In re Adoption of Atencio*, 539 Pa. 161, 650 A.2d 1064 (1994). To satisfy section (a)(1), the moving party must produce clear and convincing evidence of conduct sustained for at least six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties. The standard of clear and convincing evidence is defined as testimony that is so clear, directly weighty and convincing as to enable the trier of fact to come to a clear conviction without hesitance of the truth of precise facts in issue. *In re D.J.S.*, 737 Pa. Super. 283 (1999). In Pennsylvania, a parent's right to custody and rearing of his child is converted upon failure to fulfill his or her parental duties to the child's right to have proper parenting and fulfillment of his or her potential in a permanent, healthy, and safe environment. *In re B.N.M.*, 856 A.2d 847, 856 (Pa. Super. 2004).

Father did not achieve any of his FSP objectives throughout the thirty-one months that Child was in placement, even though Father was made aware of his FSP objectives on numerous occasions. (N.T. 12/18/14, pgs. 17-18, 24-25). Father's goal in his first FSP was to contact DHS and the agency to become involved in Child's treatment plan. (N.T. 12/18/14, pg. 18). Throughout the life of this case, there was an FSP meeting held every six months and Father's goal remained the same. (N.T. 12/18/14, pgs. 18, 21). Father was aware of his FSP goals because the FSPs were mailed to Father's residence (N.T. 12/18/14, pgs. 21, 24-25). Father testified that he received documents that were mailed to him and that he knew he was invited to the FSP meetings. (N.T. 12/18/14, pg. 59). Father chose not to participate in any of the FSP meetings that were held nor was Father present at any court hearing except the termination hearing even though there were reasonable efforts made by DHS to provide notice to Father. (N.T. 12/18/14, pgs. 14, 18, 27-28). The DHS social worker testified that Father was non-compliant with his FSP objectives, and at every permanency review hearing, Father was found by the court to be non-compliant with his FSP objectives. (N.T. 12/18/14, pg. 54). Father refused to perform his parental duties. Father knew Child was with maternal grandmother. (N.T. 12/18/14, pgs. 36-37). However Father would not keep regular contact with his Child. Father did not attend Child's medical appointments or school activities. (N.T. 12/18/14, pgs. 38-39). Father did not contact DHS, and Father did not make any effort to be a part of Child's life on a regular basis even though Father lived in the same neighborhood as Child. (N.T. 12/18/14, pg. 39).

The record established that DHS provided and offered reasonable and adequate services to remedy the conditions that brought Child into care. Since May 21, 2012, Father continuously failed to perform his parental duties towards his Child. Father has refused to fulfill his parental duties to provide Child with a permanent, healthy, and safe environment. On October 10, 2013, DHS filed the termination petition. Father's pattern of non-compliance continued for at least six months prior to the filing of the termination petition as established by the record. As a result, all elements of the Adoption Act, 23 Pa.C.S.A. §2511(a)(1) have been fully satisfied by clear and convincing evidence.

As to 23 Pa.C.S.A. §2511(a)(8), DHS met its burden by clear and convincing evidence that Child has been out of Father's care for twelve months or more, and the conditions leading to the placement still exists, and termination would best serve the needs and welfare of Child. Child has been continuously in DHS' custody for a period of thirty-one months. (N.T. 12/18/14, pg. 20). Father testified that Child has lived with maternal grandmother her entire life. Father wants Child to remain with maternal grandmother, and that maternal grandmother is providing good care for Child. (N.T. 12/18/14, pgs. 58, 60, 74). The conditions that led to Child's placement still exist. Despite the good faith efforts of DHS to make services available, it is in Child's best interest to terminate Father's parental rights. (N.T. 12/18/14, pg. 54). Child needs permanency after thirty-one months.

The trial court will now consider Father's last issue on appeal, whether the termination of parental rights would best serve Child's emotional needs and welfare under §2511(b). The party seeking termination must prove by clear and convincing evidence that the termination is in the best interest of the child. The best interest of the child is determined after consideration of the needs and welfare of the child, such as love, comfort, security, and stability. *In re Bowman*, 426 Pa. Super. 647, A.2d 217 (1994). See also *In re Adoption of T.B.B.*, 835 A.2d 387, 397 (Pa. Super. 2009). Pursuant to 23 Pa.C.S.A. §2511(b), the trial court must also consider what, if any bond exists between parent and child. *In re Involuntary Termination of C.W.S.M. and K.A.L.M.*, 839 A.2d 410, 415 (Pa. Super. 2003). The trial court must examine the status of the bond to determine whether its termination "would destroy an existing, necessary and beneficial relationship." *In re Adoption of T.B.B.* 835 A.2d 387 (Pa. Super. 2009). In assessing the parental bond, the trial court is permitted to rely upon the observations and evaluations of social workers. *In re K.Z.S.*, 946 A.2d 753, 762-763 (Pa. Super. 2008). Under 23 Pa.C.S.A. §2511(b), the rights of a parent shall not be terminated solely on the

basis of environmental factors such as inadequate housing, furnishings, income, clothing, and medical, if found to be beyond the control of the parent.

Child will not suffer any irreparable harm by terminating Father's parental rights because Child and Father do not have a parent/child bond. Child has never lived with Father and Father has never participated in or inquired about Child's medical appointments or school activities. (N.T. 12/18/14, pgs. 38, 69). There is no existing necessary and beneficial relationship between Father and Child; therefore; terminating Father's parental rights will have no irreparable harm on Child. The DHS social worker testified, that during the fifteen months he was assigned to this case, Father did not see nor had any formal or regular contact with Child even though Father was informed that he could have visits with Child. (N.T. 12/18/14, pgs. 32, 37, 48). The last time Father visited with Child was in the summer of 2014. Father and Child lived in the same neighborhood, and the only time Father would see Child was when Child would walk past him and stop to talk to him if he was outside on the steps. (N.T. 12/18/14, pgs. 36, 39). Before the visit in the summer of 2014, the last time that Father had seen Child was Christmas 2013. (N.T. 12/18/14, pg. 39). Maternal grandmother testified that Father was welcomed to come to her house to visit Child whenever he wanted but Father only visited Child on her birthday and on Christmas. (N.T. 12/18/14, pgs. 44-45). The worker from Children's Choice agency also testified that letters were sent to Father offering visitation at the agency but Father never visited with Child. (N.T. 12/18/14, pg. 48). Father testified that he would see Child outside of her house and he would walk up and talk to her but he would not go inside the house. (N.T. 12/18/14, pg. 67). Father also testified that he was pleased with the amount of times he saw Child. (N.T. 12/18/14, pg. 66). Father has an affirmative duty to maintain a relationship with his Child and he has failed to do so. The DHS social worker testified that reunification was not possible because Child and maternal grandmother have a strong bond and adoption is the best goal for Child. (N.T. 12/18/14, pgs. 26-27, 53). The DHS social worker testified that he visited Child at maternal grandmother's house monthly and observed the interactions between Child and maternal grandmother. (N.T. 12/18/14, pg. 25). The DHS social worker testified that Child is doing really well with maternal grandmother. (N.T. 12/18/14, pg.). Maternal grandmother testified that Child is six years old and that she has been taking care of Child since Child's birth. (N.T. 12/18/14, pg. 34). Maternal grandmother wants to adopt Child. Maternal grandmother already takes care of Child's other siblings. (N.T. 12/18/14, pgs. 34-35). Adoption

would be in the best interest of Child since it will provide permanency and the greatest amount of stability for Child. (N.T. 12/18/14, pg. 54).

It is in the best interest of Child to be adopted. (N.T. 12/18/14, pgs. 27, 54). DHS has provided reasonable services to Father. The trial court has found reasonable efforts at every permanency review hearing. The court determined that the testimonies of DHS witnesses were credible. Additionally, the record clearly establishes that Father's parental rights are being terminated due to his lack of non-compliance with his FSP objectives, no parent/child bond, and no irreparable harm would occur by terminating Father's parental rights. Terminating Father's parental rights is not due to environmental factors. Child has been in placement for thirty-one months and Child needs permanency. Father has failed to fully comply with his FSP objectives to facilitate reunification, lacks appropriate parenting skills, and the capacity to care for Child. Consequently, the trial court did not err in terminating Father's parental rights and changing the goal to adoption, it would best serve Child's emotional, physical and welfare needs.

## Conclusion

For the aforementioned reasons, the court finds that DHS met its statutory burden by clear and convincing evidence regarding the termination of Father's parental rights pursuant to 23 Pa.C.S.A. §2511(a) and (b). The court also finds that it will not cause irreparable harm to Child to sever any bond, and it is in the best interest of Child since it would best serve the emotional needs and welfare of Child.

Accordingly, the order entered on December 18, 2014, terminating the parental rights of Father, R.G., should be affirmed.

By the court,

Joseph Fernandes                    J.

IN THE COURT OF COMMON PLEAS
FOR THE COUNTY OF PHILADELPHIA
FAMILY COURT DIVISION

In Re: M.I.G. A MINOR      : CP-51-DP-0000821-2012

APPEAL OF: R.G., Father     : 298 EDA 2015

## PROOF OF SERVICE

I hereby certify that this court is serving, today Tuesday, March 24, 2015, the foregoing Opinion, by regular mail, upon the following person(s):

Jeri Behrman, Esquire
City of Philadelphia Law Dept.
Office of the City Solicitor
1515 Arch Street, 16th Floor
Philadelphia, Pennsylvania 19102-1595
Attorney for D.H.S.

William Calandra, Esquire
1615 Jackson Street
Philadelphia, PA 19145
Child Advocate

Patricia Cochran, Esquire
4723 Longshore Street
Philadelphia, PA 19135
Attorney for Mother

Claire Leotta, Esquire
12325 Academy Road, Suite 52
Philadelphia, PA 19154
Attorney for Father

BY THE COURT:

Honorable Joseph L. Fernandes