## Borich Adoption

*Michael J. Casale*, for petitioners.
*Peter Krehel*, for respondent.

GREEVY, *P. J.*, January 12, 1976—Sherry L. Ohmneiss and Dean L. Ohmneiss, her husband, filed a petition for the adoption of Marie Borich, alleging that the natural mother had consented thereto and that the natural father was unknown. The natural mother appeared with counsel at the hearing and objected to the adoption and requested that her alleged consent be withdrawn. Hearing was continued at the request of petitioners, without testimony being taken. Subsequent thereto, Sherry L. Ohmneiss and Dean L. Ohmneiss filed a petition for the involuntary termination of the parental rights of the natural mother and of the reputed father of the child. From the testimony we make the following

## FINDINGS OF FACT

1. Marie Borich (hereinafter referred to as "the child") was born out of wedlock on July 14, 1973.
2. The natural mother of the child is Marie Joette Borich.

3. The putative father of the child is Ronald William Belskie.

4. The child has been in the custody of Sherry L. Ohmneiss and Dean L. Ohmneiss continuously since July 17, 1973.

5. Prior to the birth of the child, Marie Joette Borich signed a form in blank purporting to give her consent to the adoption of the child by Sherry L. Ohmneiss and Dean L. Ohmneiss.

6. Marie Joette Borich's purported consent to the adoption was not voluntary, intelligent and deliberate.

7. Marie Joette Borich did not evidence a settled purpose of relinquishing her parental claim to the child, nor did she refuse or fail to perform her parental duties.

8. The child was not without essential parental care, control or subsistence necessary for her physical and mental well-being.

9. The parental rights of the natural mother, Marie Joette Borich, to her daughter, Marie Borich, will not be terminated.

10. Any parental rights that the putative father may have will not terminate, as he was not served with a copy of the petition.


## DISCUSSION

A copy of the petition for involuntary termination was mailed to the putative father named in the petition, addressed "Jenkintown, Pennsylvania 19046" but was returned "Whereabouts Unknown." The putative father's parental rights, if any, will not be terminated at this time.

Sherry L. Ohmneiss, one of the petitioners, and Marie Joette Borich, the natural mother, were the only witnesses that testified at the hearing.

Sherry L. Ohmneiss testified that she had received custody of the child on July 17, 1973, and the child has resided with her husband and herself since that date. She further testified that she did not hear from the natural mother until after the petition for adoption was filed.

Marie Joette Borich, aged 21, testified that about a month prior to the birth of the child she went to Sherry L. Ohmneiss' attorney's office with Mrs. Ohmneiss and signed a form in blank; that it was her understanding that she was agreeing to release the child from the hospital to Sherry L. Ohmneiss; that in six months she would receive a letter and she could act and get her baby; that the same day she received the letter she contacted an attorney and told him she wanted her daughter returned; that after she returned home from the hospital the natural father called and inquired as to the sex of the baby and if she was all right; that she tried, but was unsuccessful, in contacting him since that call; and that when interviewed by a caseworker of the Snyder County Child Welfare Department, she requested the return of her child.

Originally, a petition for adoption was filed based on the consent of the natural mother attached thereto. When the mother appeared and objected to the adoption being granted, the petition for involuntary termination of parental rights was filed.

Section 311 of the Adoption Act of July 24, 1970, P.L. 620 (No. 208), art. III, 1 P.S. §311, specifies grounds on which the rights of a parent may be terminated, as follows:

"(1) The parent by conduct continuing for a period of at least six months either has evidenced a settled purpose of relinquishing parental claim to a child, or has refused or failed to perform parental duties; or

"(2) The repeated and continued incapacity, abuse, neglect, or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary to his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect, or refusal cannot or will not be remedied by the parent. . . ."

The fact that the natural mother signed a consent form, had no contact with the child for over six months, and did not make her objection known until the petition for adoption was filed are not conclusive as to the aforementioned issues. Although the form is dated July 17, 1973, we find that it was signed prior to the birth of the child and that the mother's six-months inaction resulted from her mistaken belief that under the arrangement she would be able, at the end of the six months, to assert her parental rights but, in the meantime, she was not to have any contact with the Ohmneiss'. The purported consent was not voluntary, intelligent and deliberate.

Under section 311(1), one of the grounds for relinquishment is that a parent evidences a settled purpose of relinquishing parental claim. A settled purpose must imply a finality of purpose. The settled purpose which a parent must evidence under this section requires an affirmative indication of a positive intent by the parent. There was no such evidence in this case.

We also find that Marie Joette Borich did not refuse or fail to perform her parental duties to her daughter. The performance of parental duties does not necessarily mean that a parent must personally take care of the child; the responsibility of performing parental duties is met if the parent has made reasonable arrangements for the temporary care of

the child. The statute does not say a parent personally must perform parental duties and there is no basis for such a restricted interpretation.

In this case, Marie Joette Borich made arrangements for the proper care of the child for a six-month period, as she was led to believe that at the end of six months she could decide whether to personally assume her parental duties. See Wolf Adoption Case, 454 Pa. 550, 312 A. 2d 793 (1973).

Section 311(2) indicates that three things must be shown before a natural parent's rights in the child will be terminated: (1) repeated and continued incapacity, abuse, neglect or refusal must be shown; (2) such incapacity, abuse, neglect or refusal must be shown to have caused the child to be without essential parental care, control or subsistence; (3) it must be shown that the causes of the incapacity, abuse, neglect or refusal cannot, or will not, be remedied. These three criteria have not been shown to exist in this case. The record establishes that the child received proper care, control and subsistence. See In re Geiger, 459 Pa. 636, 331 A. 2d 172 (1975).

The mother's neglect to perform essential parental duties—care, control, love, protection, support, and subsistence—was not willful and irremediable.

Marie Joette Borich has not forfeited her parental right under section 311 of the Adoption Act of 1970.

"Because of the irreversible nature of a decree terminating one's parental rights, such action must be shown by a preponderance of the evidence to be clearly warranted (citation omitted). To terminate one's parental rights requires that a 'demanding standard' of evidence be satisfied.": In re David Evan Fritz, 460 Pa. 265, 333 A. 2d 466 (1975).

The demanding standard of evidence required to support termination of parental rights has not been met.

Sherry L. Ohmneiss and Dean L. Ohmneiss, petitioners seeking to involuntarily terminate the parental rights pursuant to section 311 of the Adoption Act, supra, have not proved the existence of the grounds by clear and compelling evidence.

## CONCLUSIONS OF LAW

1. The purported consent of Marie Joette Borich to the adoption was not voluntary, intelligent and deliberate.

2. Marie Joette Borich, the natural mother, has not evidenced a settled purpose of relinquishing parental claim to her child.

3. Marie Joette Borich has not refused or failed to perform her parental duties to her daughter, Marie Borich.

4. The child has not been without proper care, control or subsistence.

5. Marie Joette Borich has not forfeited her parental right under section 311 of the Adoption Act of 1970.

6. The parental rights of the natural mother or of the putative father have not been terminated.

## DECREE

And now, January 12, 1976, the petition for involuntary termination of rights is dismissed and the prayer denied. If exceptions are not filed within 20 days, this decree nisi shall be entered as a final decree.