J-S04022-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ADOPTION OF: C.A.S.T., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: T.W. AND B.W. | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1249 MDA 2017 |

Appeal from the Order Entered July 17, 2017
In the Court of Common Pleas of Snyder County Civil Division at No(s):
OC-0020-2017

BEFORE:  SHOGAN, J., DUBOW, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY DUBOW, J.:                    **FILED APRIL 09, 2018**

T.W. ("Paternal Grandmother") and B.W. ("Paternal Step-grandfather") (collectively, "Grandparents") appeal from the Order entered July 17, 2017 in the Snyder County Court of Common Pleas, which denied their Petition to terminate the parental rights of T.M. ("Mother") and M.T. ("Father") (collectively, "Parents").  We affirm in part and remand in part.[1]

**SUMMARY OF FACTS AND PROCEDURAL HISTORY**

The trial court summarized the relevant factual and procedural history of this case as follows.

> [C.A.S.T. ("Child")] was born [in] March [of] 2014.  The parents, [Father and Mother], have not resided together for a significant period of time and were not residing together when the current petition was filed or at the time of the hearing.  On July 28, 2014, [M]other filed a custody action in this matter.  In the custody

---

[1] As discussed **infra**, we grant Grandparent's motion for post-submission communication filed February 13, 2018.

action, the petitioner in this matter, [Paternal Grandmother], intervened. [M]other objected to the intervention and substantial litigation occurred from the filing of the complaint in July of 2014 throughout the hearing in this matter. … Frequent litigation resulted in multiple custody orders. On May 7, 2015, President Judge Hudock entered an order granting [Paternal Grandmother] primary physical custody [and sole legal custody of Child]. However, [F]ather had physical custody at such times that he and his mother, the Petitioner, could agree. [M]other had physical custody every other weekend and every Wednesday morning until Thursday morning.

On June 23, 2016, another order was entered suspending [M]other's period of physical custody on Wednesday to Thursday if she was working more than 4 hours during that period of custody.

And finally on April 12, 2017, [M]other's periods of physical custody were suspended because she failed to file her criminal history affidavit as required by the Rules of Procedure. The issue was that the person with whom she resided may have had a criminal history in one of the enumerated offenses in the custody action. Upon the filing of the criminal history affidavit, [Mother's] periods of physical custody were to be immediately reinstated.[2]

Trial Court Opinion, 9/15/2017, at 2-3 (internal footnotes omitted).

On April 13, 2017, Grandparents filed a Petition to Involuntarily Terminate Mother's and Father's parental rights to Child. The trial court appointed legal counsel for Child and held a hearing on Grandparents' petition on July 13, 2017. The court incorporated the record from the prior custody proceedings that occurred on May 7, 2015, and June 23, 2016. At the hearing on the Termination Petition, Grandparents presented the testimony of Paternal

---

[2] As of the date of the termination hearing, Mother had not yet filed the appropriate forms. N.T., 7/13/2017, at 45-46.

Grandmother, Grandparents' neighbor, and Child's great-grandmother. Mother and Father, each *pro se*, testified on their own behalf.[3] The GAL presented no witnesses and, in closing arguments, asserted that Paternal Grandparents had not met their burden of clear and convincing evidence to support termination under Section 2511(a)(2) or (b).

On July 17, 2017, the trial court entered its Order on the record, denying Grandparents' Petition to Terminate Parents' Parental Rights after concluding that Grandparents had not met their burden of presenting clear and convincing evidence to support the termination under Section 2511(a)(2). The court opined that custody properly belonged to Paternal Grandmother and "you [Grandmother] proved beyond a reasonable doubt – not just clear and convincing evidence -- that you being able to adopt [Child] was what's best for him in my mind. But, it's that tough burden of that first element that I don't – I just think because of the facts of the case it hasn't been met." N.T. at 112.

_____

[3] Mother had been denied IFP status. The court refused to allow her to present witnesses, except for her own testimony, because she had not submitted a witness list prior to trial as ordered. Mother's testimony covered 10 lines in which she agreed that she had not provided stability for Child or attended all medical appointments. Mother conceded on cross-examination that she agreed with Grandmother's testimony. **See** N.T., 7/17/17, at 93-94.

Grandparents timely filed a Notice of Appeal on August 11, 2017, along with a concise statement of errors complained of on appeal.[4] The trial court filed its Rule 1925(a) opinion on September 15, 2017.

**ISSUES ON APPEAL**

Grandparents now raise the following issues for our review:

[1.] Did the lower court commit error in finding that [Paternal Grandparents] did not establish, by clear and convincing evidence, grounds for termination under 23 Pa.C.S.[ ] §[ ]2511(a)(2)?

[2.] Did the lower court commit error in concluding that termination of the biological parents' rights to the subject minor child was not in the best interest of the child pursuant to 23 Pa.C.S.[ ] §[ ]2511(b)?

Grandparents' Brief at 4 (trial court answers omitted).

**STANDARD OF REVIEW**

We review an appeal from the disposition of a Petition for the Termination of Parental Rights for an abuse discretion. *In re Adoption of S.P.*, 47 A.3d 817, 826-27 (Pa. 2012). "As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record." *Id*., citing *In re R.J.T.*, 9 A.3d 1179, 1190 (Pa. 2010). Once we determine that the trial court's factual findings are supported, we review to

---

[4] Mother filed a Petition to Modify Custody on August 28, 2017, which the court subsequently stayed pending the outcome of this appeal. *See* TCO at 3; Order, dated October 3, 2017.

determine if the court erred as a matter of law or abused its discretion. ***S.P.***, ***supra*** at 826. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. ***Id***.

> As we discussed in ***R.J.T.***, there are clear reasons for applying an abuse of discretion standard of review in these cases. We observed that, unlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. ***R.J.T.***, 9 A.3d at 1190. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion.

***Id.,*** 47 A.3d 817, 826-27 (Pa. 2012) (citation omitted).

"As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion." ***Id***.

**ADOPTION ACT**

Section 2511 of the Adoption Act, 23 Pa.C.S. §§ 2101-2938, governs termination of parental rights and requires a bifurcated analysis.

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the

needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

"In termination cases, the burden is upon [the petitioner] to prove by clear and convincing evidence that its asserted grounds for seeking the termination of parental rights are valid." *In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009) (emphasis added). We have explained that "[t]he standard of clear and convincing evidence is defined as testimony that is so 'clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue.'" *Id.* (quoting *In re J.L.C.*, 837 A.2d 1247, 1251 (Pa. Super. 2003)).

In this case, Grandparents sought to terminate Parents' parental rights pursuant to Section 2511(a)(2) and (b), which provide as follows:

> **(a)    General Rule**.—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> . . .
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> . . .
>
> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental,

physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(2), (b).

"Termination proceedings often require the factfinder to evaluate medical and psychiatric testimony, and to decide issues difficult to prove to a level of absolute certainty, such as lack of parental motive, absence of affection between parent and child, and failure of parental foresight and progress." *In re Adoption of J.J.,* 515 A.2d 883, 892 (Pa. 1986).

**TERMINATION AS TO MOTHER**

**Termination Pursuant to Section 2511(a)(2)**

In their first issue, Grandparents argue that the trial court erred in finding termination inappropriate under Section 2511(a)(2) because Mother failed or refused to perform her parental duties for Child for over two years. Grandparents' Brief at 30. Grandparents also assert that Mother did not "exercise reasonable firmness in resisting obstacles to maintain the parent-child relationship."[5]  *Id.* at 34.

---

[5] We note that Grandparents' argument appears to use the language from subsection (a)(1) in arguing that the trial court erred in denying their Petition to terminate Mother's parental rights. We note for clarification that

To satisfy the requirements of Section 2511(a)(2), the moving party must produce clear and convincing evidence that the following three conditions are met: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; **and** (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied. *In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2003) (emphasis added); 23 Pa.C.S. § 2511(a)(2). The grounds for termination of parental rights under Section 2511(a)(2), due to parental incapacity that cannot be remedied, are not limited to affirmative misconduct; those grounds may include acts of refusal as well as incapacity to perform parental duties. *In re A.L.D.*, 797 A.2d 326, 337 (Pa. Super. 2002).

Parents have an "affirmative duty" to work toward the return of their children. *See In re Julissa O.*, 746 A.2d 1137, 1141 (Pa. Super. 2000) (citations omitted). "This 'affirmative duty,' at minimum, requires a showing by the parent of a willingness to cooperate . . . to obtain the rehabilitative services necessary for the performance of parental duties and responsibilities." *Id.* (citation omitted).

---

Grandparents' termination petition only asserted grounds for termination under subsection (a)(2). Accordingly, we limit our review to whether the trial court erred in denying to terminate Mother's parental rights pursuant to Section 2511(a)(2).

At the termination hearing, Paternal Grandmother testified that Child came into her care in May 2015 due to Parents' instability. N.T., 7/13/2017, at 10-11. She stated that Mother lacked stable housing, lacked financial stability to provide for Child's basic needs, and could not attend to Child's medical needs at that time. *Id.* at 11. In particular, Paternal Grandmother noted that Mother has resided in eight different residences since 2015 and that Mother moves to a new residence approximately every three to four months. *Id.* at 20. In addition, Paternal Grandmother stated that, since 2015, Mother has had five different jobs, the longest one lasting five months. *Id.* at 21.

With respect to Mother's exercise of her visitation rights, Paternal Grandmother testified that Mother attended seventy-five percent of her visits from May 7, 2015 through April 12, 2017. However, since the custody order was modified on April 12, 2017, Mother has only attended ten of twenty-six possible visits. N.T., 7/13/2017, at 63. Likewise, Paternal Grandmother stated that she has offered Mother additional time to see Child, such as on his birthday, but Mother declined extra visits with Child. *Id.* at 31-33. Grandmother also admitted that Mother had called her most times when she was unable to exercise her visitation rights to tell her that she was sick, or without transportation, or scheduled to work. *Id*. at 38. On four occasions, Paternal Grandmother provided Mother with a car seat because Mother had arrived to pick up Child for a visit without one. *Id.*

Paternal Grandmother also testified that Mother does not call Child or send Child gifts or cards, although Grandmother admitted she did not know the type of toys the Child has at Mother's house. N.T., 7/13/2017, at 38. Mother conducted no cross-examination.

During her testimony, Mother admitted that she lacks stability and has failed to attend the majority of Child's medical appointments. Mother testified, "I already lost one child this year, I can't lose another and if it takes me having to spend time with [Paternal Grandmother] to be around my son then so be it, I don't care. I don't want to lose my boy." N.T., 7/13/2017, at 94. [6]

At the close of testimony, the GAL argued that Grandparents had not met their burden under Section 2511(a)(2) of clear and convincing evidence.

The trial court then found that, while Mother could benefit from more stable housing and employment, she is able to provide for Child's "essential care, control and subsistence" while Child is in her care. Trial Court Opinion, 9/15/2017, at 4-5. The trial court explained:

> Both parents have clearly been able to provide for the child's essential care, control and subsistence on weekends and at other times. [Paternal Grandmother] testified that she does not know what takes place at the mother's residence or what toys, clothing, etc. is provided by the mother.
>
> . . .
>
> If [Paternal Grandmother] truly believed that either parent caused the child to be without essential parental care, control or subsistence, it defies logic as to why she would have allowed the

---

[6] Mother lost a child when she miscarried. *See* Exhibit P-6.

child to go with them for extended periods of time without supervision or checking.

The record is void of any evidence showing that the child has been injured in any way other than what a normal 3 year old would experience as far as injuries while in the care of either parent. There was some testimony regarding not changing a diaper or wearing a diaper, but this hardly establishes that the child is without proper care to the point that would warrant termination of parental rights.

*Id.* at 6-7.

The testimony of Paternal Grandmother presented at the termination hearing raises some concerns and the facts present a close question of whether the termination petition should be granted at this point. However, in light of our standard of review, we cannot conclude that the trial court abused its discretion in concluding that Grandmother had not shown by clear and convincing evidence that "[t]he repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent." 23 Pa.C.S. § 2511(a)(2). The trial court was in a best position to determine credibility, evaluate the evidence, and make a proper ruling. Since competent evidence exists to support the trial court's conclusions, we are constrained to affirm the denial of Grandparents' petition pursuant to Section 2511(a)(2).

We note, however, that if the Parents are unable to progress to providing stability, security, and safety for the Child on a seven-day-a-week, 24-hour basis, the court should consider this factor in a subsequent Petition.

**Termination Pursuant to 2511(b)**

Even if we were to conclude that the trial court erred by not terminating Mother's parental rights pursuant to Section 2511(a)(2), Grandparents would still not be entitled to relief because they failed to present clear and convincing evidence to support the termination of Mother's parental rights pursuant to Section 2511(b).

> Section 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. As this Court has explained, Section 2511(b) does not explicitly require a bonding analysis and the term 'bond' is not defined in the Adoption Act. Case law, however, provides that analysis of the emotional bond, if any, between parent and child is a factor to be considered as part of our analysis. While a parent's emotional bond with his or her child is a major aspect of the subsection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child.
>
>> [I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. Additionally, this Court stated that the trial court should consider the importance of continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child.

*In re Adoption of C.D.R.*, 111 A.3d 1212, 1219 (Pa. Super. 2015) (quoting *In re N.A.M.*, 33 A.3d 95, 103 (Pa. Super. 2011)) (citations and quotation marks omitted).

Here, Grandparents argue that they provide the Child "with his day to day needs like food, clothing, and medicine. Grandparents provided health insurance coverage for [the Child] and [Paternal] Grandmother scheduled and took [the Child] to all of his medical appointments." Grandparents' Brief at 42. Grandparents assert that the Child looks to Paternal Grandmother for comfort and that the Child appears distressed during custody exchanges with Mother. *Id.* at 40.

The trial court held that Grandparents failed to present any testimony or evidence addressing how the termination of Mother's parental rights would affect the developmental, physical and emotional needs and welfare of the Child. Trial Court Opinion, 9/15/2017, at 7. Accordingly, the trial court concluded that Grandparents failed to present sufficient evidence to satisfy the burden of proof necessary to terminate Mother's parental rights pursuant to Section 2511(b).

Likewise, the Child's legal counsel, Matthew Slivinski, Esquire, argued against terminating Parents' parental rights, stating on the record:

> This is a child that's three years old. As the Court's familiar, the first 18 months are important in a child's life and there's been nothing offered today as to what affect – with that continued contact up to this point, what affect that would have on this child. I can't speak to that and there's nothing put in here today to whether that would be a detriment to [Child] or not to [Child]. There's been no testimony as to what he refers to people as in his life whether they're mom, dad. Absent some case out there that could be provided, I don't know that although this child needs stability, I don't know that if with what's still hanging out here, whether or not we've gotten to that point, and that's at no fault of [Grandparents]. . . .

- 13 -

N.T., 7/13/2017, at 106.

We agree that Grandparents failed to meet their burden. Our review of the record indicates that there was no evidence presented concerning the effect that termination would have on Child. Without such evidence, the trial court was unable to assess the needs and welfare of Child if Mother's parental rights were terminated. *In re C.P.*, 901 A.2d 516 (Pa. Super. 2006) (finding where the record was devoid of evidence regarding effect termination would have on the child, trial court had no way of assessing effect of termination on needs and welfare). Our Supreme Court has specifically noted that the Adoption Act requires that a trial court examine the effect termination will have on the needs and welfare of the child involved. *In re Adoption of Godzak*, 719 A.2d 365, 368 (Pa. Super. 1998) (citing *In re Atencio*, 650 A.2d 1065 (Pa. 1994)). Without competent evidence of record that examines the effect termination has on Child's needs and welfare, we are constrained to affirm the trial court's decision to deny Grandparents' Petition to terminate Mother's parental rights to Child.

**TERMINATION AS TO FATHER**

On February 13, 2018, Grandparents filed an application for post-submission communication, asserting that Father has consented to the voluntary termination of his parental rights. Attached to their application, Grandparents included Father's signed Consent to Adoption.

- 14 -

Subchapter A of the Adoption Act provides, *inter alia*, for the voluntary relinquishment of parental rights under Section 2504. Section 2504 provides as follows:

**§ 2504. Alternative procedure for relinquishment**

**(a)** **Petition to confirm consent to adoption.**—If the parent or parents of the child have executed consents to an adoption, upon petition by the intermediary or, where there is no intermediary, by the adoptive parent, the court shall hold a hearing for the purpose of confirming a consent to an adoption upon expiration of the time period under section 2711 (relating to consents necessary to adoption). The original consent or consents to the adoption shall be attached to the petition.

**(b)** **Hearing.**—Upon presentation of a petition filed pursuant to this section, the court shall fix a time for a hearing which shall not be less than ten days after filing of the petition. Notice of the hearing shall be by personal service or by registered mail.... Notice of the hearing shall be given to the other parent or parents, to the putative father whose parental rights could be terminated pursuant to subsection (c) and to the parents or guardian of a consenting parent who has not reached 18 years of age. The notice shall state that the consenting parent's or putative father's rights may be terminated as a result of the hearing. After hearing, which shall be private, the court may enter a decree of termination of parental rights in the case of a relinquishment to an adult or a decree of termination of parental rights and duties, including the obligation of support, in the case of a relinquishment to an agency.

23 Pa.C.S. § 2504.

Thus, pursuant to the procedures set forth in Section 2504, the Adoption Act requires Grandparents to petition the trial court to confirm Father's consent to adoption and the trial court must conduct a hearing on the petition, no less than ten days after the petition is filed.

- 15 -

Our Supreme Court has explained that the purpose of a hearing on a petition to relinquish parental rights voluntarily is to insure an intelligent, voluntary, and deliberate consent to the termination of parental rights. *In re Wolfe,* 312 A.2d 793, 796 (Pa. 1973). A parent's consent to terminate his parental rights voluntarily must be "clear and unequivocal." *In re Singer,* 326 A.2d 275, 278 (Pa. 1974). "Termination of parental rights is a drastic measure that should not be taken lightly. Not only are [the parent's] rights at stake here, but [the child's] right to a relationship with [his or her parent] is also at stake." *In re K.G.M.,* 845 A.2d at 864 (citing *In re Stickley,* 638 A.2d 976, 980 (Pa. Super. 1994)). Accordingly, we grant Grandparents' Application for post-submission communication and remand the case with instructions to hold a hearing on Father's consent for adoption.

Based upon the foregoing, we affirm the Order denying the Petition to Involuntarily Terminate Parents' Parental Rights to the Child without prejudice, and remand the case for the trial court to conduct a hearing on Father's consent for adoption.

Order affirmed. Application for post-submission communication granted. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/19/18

- 16 -