J-A26023-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE MATTER OF: THE ADOPTION OF: V.F.C, A MINOR | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: A.M.C., MOTHER | : : : : : : | |
| | : | No. 623 WDA 2025 |

Appeal from the Decree Entered April 9, 2025
In the Court of Common Pleas of Erie County Orphans' Court at No(s):
98A in Adoption 2024

| | | |
|---|---|---|
| IN THE MATTER OF: THE ADOPTION OF: I.F.C., A MINOR | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: A.M.C., MOTHER | : : : : : | |
| | : | No. 624 WDA 2025 |

Appeal from the Decree Entered April 9, 2025
In the Court of Common Pleas of Erie County Orphans' Court at No(s):
98 in Adoption 2024

BEFORE:  OLSON, J., STABILE, J., and KING, J.

MEMORANDUM BY OLSON, J.:                    **FILED: JANUARY 27, 2026**

A.M.C. ("Mother") appeals from the April 9, 2025 decrees that

voluntarily terminated her parental rights to her son, I.F.C., born in May 2020,

and her daughter, V.F.C., born in May 2021 (collectively, "the Children").[1] Upon careful review, we affirm.

We glean the following relevant factual and procedural history from the certified record. The Children were placed in emergency protective custody of Erie County Office of Children and Youth ("OCY" or "the Agency") in September 2023, due to domestic violence between Parents and their declining mental health. *See* N.T., 2/27/25, at 30-35. Following a hearing, the court adjudicated the Children dependent on October 10, 2023.

The court established the Children's permanency goals as reunification. In furtherance thereof, the court ordered Mother to, *inter alia*, participate in a cognitive assessment, maintain safe and stable housing, attend mental health services and follow any recommendations, complete an agency-approved parenting program, and attend all meetings and medical appointments regarding the Children.

The court conducted permanency review hearings at regular intervals. In October 2024, the court determined that Mother had been minimally compliant with her permanency plan and had not made progress toward alleviating the circumstances which necessitated the Children's placement. At

---

[1] Pursuant to separate decrees, also entered on April 9, 2025, the orphans' court granted the request of J.C. ("Father") (collectively with Mother, "Parents") to voluntarily relinquish his parental rights to the Children. Father did not appeal or participate in the instant appeal.

the same time, OCY petitioned the court to change the Children's permanency goals to adoption. On October 25, 2024, the juvenile court granted OCY's petitions.

On November 1, 2024, OCY filed petitions to involuntarily terminate Parents' parental rights to the Children pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b). The court appointed the Children's guardian *ad litem* ("GAL") from the dependency matter to represent them in the involuntary termination proceeding.[2]

On February 27, 2025, the court began hearing testimony on OCY's petitions to involuntarily terminate Parents' parental rights to the Children. OCY presented the testimony of numerous witnesses and introduced twenty-two exhibits into evidence, which the court admitted. OCY completed its case-in-chief, and Mother presented the testimony of two witnesses: Anjelica Whren and Robin Bartlett, caseworkers that aided Parents with their goals. The court continued the involuntary termination hearing on March 10, 2025, at which time Mother presented testimony from her treating

_____

[2] Section 2313(a) of the Adoption Act, 23 Pa.C.S.A. § 2313(a), mandates the appointment of legal interest counsel for children involved in contested involuntary termination of parental rights proceedings. *See In re Adoption of L.B.M.*, 161 A.3d 172, 174 (Pa. 2017). As such, our Supreme Court has held that this Court conduct a limited *sua sponte* review to confirm that counsel is appropriately appointed for children who are the subjects of involuntary termination proceedings. *See In re Adoption of K.M.G.*, 240 A.3d 1218, 1236 (Pa. 2020). Here, we need not consider the appointment of legal counsel *sua sponte* inasmuch as the instant appeal pertains to voluntary, as opposed to involuntary, termination of parental rights.

psychologist, Andrea Zeiber, Psy.D. The court again continued the hearing for the purpose of Father presenting his evidence in defense of the petitions.

On April 4, 2025, the court reconvened to conclude the involuntary termination hearing. At the outset of the hearing, however, Mother's counsel notified the court that Mother desired to voluntarily relinquish her parental rights to the Children pursuant to 23 Pa.C.S.A. § 2501. **See** N.T., 4/4/25, at 2. Mother also presented relinquishment petitions for each child, which included her waiving the statutory ten-day hearing period. **See** Waivers, 4/4/25; **see also** 23 Pa.C.S.A. § 2503(b).

The record reveals that, after the March 10, 2025 hearing, Parents experienced "a change in circumstances." N.T., 4/4/25, at 2, 6. Although the record does not specify or describe the nature of this change in circumstances, there is no dispute that it existed, and that it motivated Parents' desire to voluntarily relinquish their parental rights on April 4, 2025.[3]

_____

[3] We note that OCY objected to the orphans' court acting upon Parents' petitions for voluntary relinquishment because the involuntary termination proceeding was nearly complete, and the orphans' court had previously provided Parents an opportunity to voluntarily relinquish their rights, which they declined. **See** N.T., 4/4/25, at 3. The court overruled OCY's objection and proceeded to conduct colloquies of Parents for the purpose of ratifying their consent to the voluntary termination of parental rights. **See id.** at 5-15. Moreover, the Children were only four and three at the time of the hearing on OCY's petitions to terminate Parents' parental rights. Due to the young age of the Children, it may be presumed that there would be no conflict between the Children's best interests and their preferences. Thus, a separate attorney was not required to be appointed to represent the Children's legal interests. **See**
*(Footnote Continued Next Page)*

- 4 -

By decrees dated April 4, 2025, and entered April 9, 2025, the court granted Mother's petitions and permitted her to voluntarily relinquish her parental rights to the Children. Mother, through counsel, timely filed separate notices of appeal and concise statements of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b), which this Court consolidated *sua sponte* on July 3, 2025. The orphans' court filed a Rule 1925(a)(2)(ii) opinion on June 3, 2025.

On appeal, Mother raises the following issue for our consideration:

> Whether the trial court erred in accepting [Mother's] in-trial voluntary relinquishment of parental rights pursuant to 23 Pa.C.S.[A.] § 2504 and applicable case law[?]

Mother's Brief at 7 (suggested answer omitted).[4,5]

This Court has declared:

> With regard to revocation of consent to adoption in relation to a voluntary relinquishment of parental rights, we review the trial court's determination for an abuse of discretion or legal error. *In re K.G.M.*, 845 A.2d 861, 863 (Pa. Super. 2004). We stated,

---

*In re: T.S.*, 192 A.3d 1080 (Pa. 2018) (Separate counsel not required for two year old and three year old children.).

[4] Mother appears to mistakenly refer to Section 2504 (Alternative procedure for relinquishment). It is clear from the title of, and language utilized in, her petitions that she sought to voluntarily relinquish her parental rights pursuant to Section 2501. *See* Petitions for Voluntary Relinquishment, 4/4/25.

[5] Despite objecting to the court acting upon Mother's petitions for voluntary relinquishment in the underlying proceeding, OCY has filed an appellee brief requesting that this Court affirm the subject decrees. In addition, the Children's GAL has filed a brief in support of affirming the decrees.

> When reviewing a decree entered by the Orphans' Court, this Court must determine whether the record is free from legal error and the court's factual findings are supported by the evidence. Because the Orphans' Court sits as the fact-finder, it determines the credibility of the witnesses, and on review, we will not reverse its credibility determinations absent an abuse of that discretion.
>
> *Id.* (quoting *In re A.J.B.*, 797 A.2d 264, 266 (Pa. Super. 2002)); accord *In re A.M.B.*, 812 A.2d 659, 662 (Pa. Super. 2002); *In re J.F.*, 862 A.2d 1258, 1260 (Pa. Super. 2004) (citing *In re A.M.B.* and *In re A.J.B.* for the proposition that we must "determine if the record is free from legal error and if the factual findings are supported by the evidence.").

*In re C.M.C.*, 140 A.3d 699, 704-705 (Pa. Super. 2016).

The Adoption Act provides for voluntary relinquishment of parental rights under Section 2501, in part, as follows:

**§ 2501. Relinquishment to agency.**

**(a) Petition.**--When any child under the age of 18 years has been in the care of an agency for a minimum period of three days or, whether or not the agency has the physical care of the child, the agency has received a written notice of the present intent to transfer to it custody of the child, executed by the parent, the parent or parents of the child may petition the court for permission to relinquish forever all parental rights and duties with respect to their child.

**(b) Consents.**--The written consent of a parent or guardian of a petitioner who has not reached 18 years of age shall not be required. The consent of the agency to accept custody of the child until such time as the child is adopted shall be required.

23 Pa.C.S.A. 2501(a)-(b).

Section 2503 provides for a hearing on the voluntary relinquishment petition and requires that it "shall not be less than 10 days after the filing of the petition. The petitioner must appear at the hearing." 23 Pa.C.S.A.

§ 2503(a). Further, the statute provides that "[a]t least ten days' notice of the hearing shall be given to the petitioner." 23 Pa.C.S.A. § 2503(b). This Court has explained:

> [T]he purpose of a hearing on a petition for voluntary relinquishment is to [ensure] an intelligent, voluntary, and deliberate consent to the termination of parental rights. **In re Wolfe**, 454 Pa. 550, 555, 312 A.2d 793, 796 (1973). "A party seeking to disturb a termination decree must show that the consent given to terminate parental rights was not intelligent, voluntary, and deliberate." **In re M.L.O.**, 490 Pa. 237, 240, 416 A.2d 88, 90 (1980).

**C.M.C.**, 140 A.3d at 711.

On appeal, the crux of Mother's argument is that her "mid-trial reversal on April 4, 2025, offered after contested evidence had already been presented, raised serious concerns regarding the voluntariness and validity of her decision." Mother's Brief at 8. Moreover, Mother claims that her responses in the colloquy do not demonstrate an intelligent, voluntary, and deliberate decision. **See id.** For instance, Mother references the following statements:

> When asked whether she understood the proceeding, Mother answered, "I guess." She further stated, "I don't understand it, but I'll be alright," and "I really don't feel that this is fair." She also remarked, "It's not going to do anything, but it's okay," and "It's the best for my kids." N.T., 4/4/25, at 7-11.

**Id.** at 15. Mother argues that these statements demonstrate "confusion, ambivalence, and emotional distress" – not a clear and informed decision. **Id.** at 15.

Mother also baldly asserts that the orphans' court abused its discretion because it did not consult with Mother's therapist; "assess Mother's treatment

- 7 -

progress;" or inquire about Mother's "abrupt" change in position since March 10, 2025, the second day of the involuntary termination proceeding. ***Id.*** at 15-16. Specifically, Mother contends that the court should have examined whether her decision was "influenced by fatigue, frustration, coercion, or other emotional factors inherent in the termination process." ***Id.*** at 16. We must disagree.

Following Mother's colloquy, the orphans' court ruled on the record and in open court, as follows:

> I am going to accept the petition for voluntary relinquishment with regard to [Mother]. I understand that we are in the middle of an involuntary termination trial. . . . **However, I do understand there has been change in circumstances. I do believe that the parents have come forward and requested this at this time and, most importantly, I believe that this expedites the permanency for [the Children]** which is front and center to the Court's determination here today is that these children are able to have consistent, stable permanency and know where their feet are going to land every day. So, for those reasons, I am going to accept the voluntary relinquishment of parental rights with regard to [Mother] for both [Children].

N.T., 4/4/25, at 10-11 (emphasis added). Further, in its Rule 1925(a) opinion, the court reasoned:

> Mother requested the orphan's court allow her to voluntarily relinquish her parental rights to the Children mid-way through the involuntary termination trial. At the time of Mother's request, the Agency had rested its case and Mother had presented some witnesses on her behalf. At the request of Mother's counsel, the court allowed her an opportunity to review and sign the relinquishment and [10-day] waiver paperwork with Mother. ***See*** Voluntarily Relinquishment Petitions 4/4/25. A colloquy was then placed on the record where Mother clearly testified that it was her intent to relinquish her paternal rights. Mother acknowledged that she was not under the influence of any substances; was aware of

what she was doing; had an opportunity to consult with her counsel and review the Petitions; was not forced or threatened in any way to sign the Petitions; was waiving the [10-day] period in which she could change her mind; and believed this decision was in the best interest of the Children. Following the colloquy with Mother's counsel, the orphan's court conducted its own colloquy with Mother. The record of [this colloquy] clearly supports the orphan's court's finding that Mother intelligently, voluntarily and deliberately consented to the relinquishment of her paternal rights to the Children.

Orphans' Court Opinion, 6/3/25, at 11 (cleaned up). The record supports the court's findings.

Upon inquiry by counsel, Mother testified as follows:

Q: You and I had the opportunity to have a conversation prior to the start of today's trial, **and I understand some circumstances in your life have changed such that we now -- you now believe it would be in your best interest and the [C]hildren's best interest to voluntarily relinquish your rights?**

A: **Yes.**

Q: [Y]ou had signed paperwork and we had gone over a petition regarding the voluntary relinquishment for [the Children]; is that correct?

A: Yes.

Q: And you understand that the reason articulated within both petitions is that you cannot provide an adequate home for the [C]hildren?

A: Yeah.

Q: You had also signed a waiver, a ten-day waiver; is that correct?

A: Yeah.

Q: And did I explain to you that under the normal course of things, you would have a ten-day period in which to change your mind to a voluntary relinquishment?

A: Yes.

Q: And you're waiving that because we are scheduled to proceed with trial today; is that correct?

A: Yes.

Q: [D]id I or anybody else force you to sign this paperwork?

A: No.

Q: Do you feel pressured to sign this paperwork?

A: No.

Q: Are you doing this of your own volition?

A: Yes.

Q: Did anybody promise you anything as a result of voluntarily relinquishing your rights?

A: No.

Q: [A]re you under the influence of any drugs or alcohol today . . . that would potentially impair your ability to make this decision?

A: No.

Q: Do you have any questions for myself or the [c]ourt?

A: I would be lying, but I'm not going to ask, so no.

Q: This is your only opportunity to ask the judge regarding any questions you have. Do you have any questions that you wish to ask the [c]ourt? [] I understand this is a very difficult situation, but I need to know if there [are] any questions that you have that we make sure are answered before the [c]ourt would affirm these petitions.

A: No.

N.T., 4/4/25, at 5-8 (emphasis added).

Thereafter, Mother testified upon inquiry by the orphans' court:

Q: Do you feel like you understood everything going on here today?

A: I guess.

Q: Do you have any questions for me about any of it?

A: No.

Q: **It's my understanding that some circumstances have changed in your life that have caused you to make this decision.**

A: **Yeah.**

Q: **And that you're making this decision because it's in the best interest of yourself at this point, and the [C]hildren?**

A: **Yes.**

Q: And you're not under the influence of any substances today?

A: I don't drink, I don't do anything.

. . .

Q: You understand everything that's occurring here today?

A: I don't understand it, but [] I'll be alright.

Q: When you say you don't understand it --

A: I really don't feel that this is fair.

Q: Okay.

A: But it's okay. You guys can continue.

Q: Well, here is the thing. I have to make sure you're knowingly, voluntarily, and intelligently making this determination.

A: I am. It's not going to do anything, but it's okay.

Q: This is what you --

A: **It's best for my kids.**

*Id.* at 8-10 (emphasis added).

While Mother referred to snippets of her colloquy responses in her brief, the totality of her colloquy supports the orphans' court's determination that Mother made an intelligent, voluntary, and deliberate decision to voluntarily relinquish her parental rights to the Children. Mother's testimony reveals that she informed her attorney that undisclosed circumstances in her life had changed such that she desired to voluntarily relinquish her parental rights to the Children. *See id.* at 6. Further, Mother indicated that she reviewed the petitions with her attorney, and she believed termination of her parental rights was in the best interests of the Children. *See id.* Mother declared that her consent was voluntarily given and that she had not been pressured, coerced, or promised anything. *See id.* at 7. Importantly, at the conclusion of the colloquy, the court emphasized the need for Mother's decision to be intelligent, voluntary, and deliberate, which she confirmed. *See id.* at 9. Specifically, she responded that, in conjunction with her recent life changes, her decision was based upon what is "best for my kids." *Id.* at 6, 9. Because competent evidence supports the subject decrees, we do not disturb them.

To the extent Mother contends that her decision was allegedly "abrupt" and therefore not intelligent, voluntary, and deliberate, Mother fails to provide any discussion or citation to legal authority demonstrating that they are mutually exclusive. Assuming *arguendo* that Mother's decision, if abrupt, would make her decision not intelligent, voluntary, and deliberate, OCY aptly indicates that Mother had the benefit of hearing all its evidence in its case-in-chief, and she had presented three of her own witnesses. *See* OCY's Brief, 8/19/25, at 16-17. Thus, there is no indication in the certified record that Mother made a hasty decision to voluntarily relinquish her parental rights. Mother's subsequent regret is not a valid basis for reversing the trial court's determination that she made an intelligent, voluntary, and deliberate decision. *See In re M.L.O.*, 416 A.2d 88, 90 (Pa. 1980) (citing *In re Watson*, 301 A.2d 861, 864 (Pa. 1973). ("[T]he Adoption Act does not 'accommodate the hind-sight of the natural parent'"). Indeed, our Supreme Court has disapproved of attempts by biological parents to second-guess their consent to voluntary relinquishment in the absence of any "affirmative indication" that their initial agreement was "unintelligent, involuntary, or unconsidered." *Watson*, 301 A.2d at 864. Based upon the foregoing, we conclude that competent evidence supports the orphans' court's findings that Mother's relinquishment of parental rights was intelligent, voluntary, and deliberate at the time she made the decision.

Finally, regarding Mother's assertion that the court should have considered, *inter alia*, her fatigue and frustration, Mothers cites no law in support. We reiterate that the touchstone of relinquishment cases is that a parent makes an intelligent, voluntary, and deliberate decision. ***See C.M.C.***, 140 A.3d at 711. As discussed *supra*, the orphans' court's determination is well-supported by the certified record. Therefore, this contention fails. Accordingly, we affirm the decrees voluntarily terminating Mother's parental rights.

Decrees affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 1/27/2026